## MALINDA AND SARAH vs. GARDNER ET AL.

1. Slaves cannot contract marriage, nor does their cohabitation confer any legal rights on their children.
2. The property of a free negro, who dies intestate, escheats to the State, when there are no persons who can claim as heirs-at-law; and if the State, by act of the Legislature, afterwards relinquishes all its rights to the intestate's children, born of two female slaves with whom he cohabited, neither set of children is in a condition to insist on the necessity of an inquisition to vest title in the State.
3. Slaves which have escheated to the State may be emancipated by an act of the Legislature, and the validity of the act can only be questioned by one who shows a right of property in himself.
4. An administrator is not chargeable with a bequest made to the intestate in his life-time, when the knowledge of it is not brought home to him.

APPEAL from the Court of Probate of Dallas.

In the matter of the final settlement of the estate of Tom, a free negro, by Garland F. Gardner, his administrator. The following facts are shown by the record:

The intestate belonged to Baxter Smith, who died in Dallas County, in 1828, leaving a last will and testament, in which he directed his executors to emancipate said Tom and a woman named Charity, with whom said Tom had cohabited, and by

whom he had two children, Malinda and Sarah, the appellants. After the death of said Baxter Smith, an act was passed by the Legislature of this State, approved December 24, 1828, authorizing his executor to emancipate said Tom and Charity, and their children, upon entering into bond conditioned that they should not become a charge to the State, nor to any county, town or city therein ; and under this act the executor gave the bond required, and emancipated the slaves. Before the death of said Baxter Smith Tom had ceased cohabiting with said Charity, and had formed another connection with a woman of the same name, who was also a slave, and whom he purchased after his emancipation ; with this woman he continued to cohabit until his death, and had three children by her, viz., Organ, Miles and Rebecca.

Tom having died in 1850, letters of administration on his estate were granted to said Gardner in June, 1850. An act of the Legislature was passed, January 12, 1852, emancipating the "negro slaves belonging to the estate of said Tom, to-wit : Charity, his widow, and Malinda, Sarah, Organ, Miles, and Rebecca, his children," upon their removal from the State within two years after the passage of the act ; relinquishing all the rights which had accrued to the State, by escheat, in the property of said Tom ; and enacting that, upon the said Gardner's executing a bond for the removal of said negroes from the State, " then the said Charity, Malinda, Sarah, Organ, Miles, and Rebecca shall be qualified, in law, to take and inherit the estate, real and personal, of the said Tom, in such portions as it would descend to them by the statute of distributions.—Pamp. Acts 1851–2, p. 486. The said Gardner executed the bond required by this act. Upon this evidence, the court decided, that said Malinda, Sarah, Miles, Organ and Rebecca, were entitled to share equally, as distributees, in the estate of said Tom ; and to this ruling of the court, the said Malinda and Sarah excepted.

On the settlement of the administrator's accounts, the distributees sought to charge him with the amount of a legacy of $500, bequeathed to said Tom by one Bartholomew Smith, whose will was admitted to probate in October, 1847. The only evidence introduced in support of this charge, was " the record of the final settlement of the estate of said Bartholo-

mew Smith, and the decrees rendered therein ; by which," as the bill of exceptions states, " there was nothing to show that said legacy, or any part thereof, had been paid to said Tom." The court refused to charge the administrator with the amount of this legacy, and the appellants excepted. These two rulings of the court are now assigned for error.

GEORGE W. GAYLE, for the appellant :

1. The Probate Court should have charged the administrator with the legacy of $500, because it was not barred, and he could have collected it.—Duffee v. Buchanan, 8 Ala. 27.

2. Malinda and Sarah are the only heirs of Tom, and entitled to his estate : 1st, because they took inheritable blood by their emancipation in 1828. Tom and their mother, were man and wife, in slavery, so far as natural law and moral obligation could make them so. The relation between them as man and wife, even in that humble condition, was not against law. They were not fornicators, nor guilty of adultery, but were husband and wife, *de facto*, and bound by moral obligation, recognized by law.—State v. Smith, 9 Ala. 990. Emerging from slavery by the act of 1828, they find themselves in freedom, as husband and wife and children, and live in this way for awhile after emancipation. They are man and wife and children, then, after emancipation.—State v. Murphy, 6 Ala. 767 ; Wall v. Williamson, 8 Ala. 48. 2nd. Because the act of 1852 gives them inheritable blood again.—Act of 1852. These are the proofs of the right of inheritance of Malinda and Sarah, alone.

3. Organ, Miles and Rebecca are not heirs of free Tom : 1st, because they were the slaves of Tom, and have never been emancipated.—Act of 1852. 2nd. Because, being slaves, they could not take inheritable blood under the act of 1852. 3. Because, if the act of 1852 frees them, the Legislature had no right to pass it.—Con. of Ala. title " slaves." 4. Because, being slaves, the Legislature could make no gift to them, either of emancipation or right of inheritance. Such a gift would inure to the benefit of the owner of the slaves.—Brandon v. Bank, 1 Stewart's R. 320; Coleman v. Allston, 7 Ala. 795 ; Carroll v. Brumby, 13 *ib*. 102.

1. In reply : It is said, that by the death of Tom his property escheated to the State, and, having escheated, the State

Malinda and Sarah v. Gardner et al.

had the right to do with it as it pleased, and therefore had the right to give it in part to "Miles, Organ and Rebecca." This argument is met thus : 1st, the act of 1852 does not free them, and while slaves they can take nothing. 2nd. There were heirs of Tom (Malinda and Sarah), and they were their slaves. Malinda and Sarah were given inheritable blood by the act of 1852, even if they did not have it before. This act, to this extent, was legal. 3. Tom's estate had not escheated, and the State had no control over it. There had been no inquiry as to heirs, as directed by law.—Clay's Digest. That there was no inquiry, is evident from the language of the act of 1852, which relinquishes all such property as has or may escheat. If there was an escheat, the property must be disposed of as the statute directs.—2 Brev. 31 ; 18 Ala. 565. 4th. If there was an escheat, the relinquishment was not to "Miles, Organ and Rebecca"—slaves—but to the children of Tom previously emancipated. The relinquishment is in the first section of the act, and is to no one in particular, but must be to such as are morally entitled to it as free people. 5. But there was no escheat ; and the question is, had the Legislature the right to emancipate "Miles, Organ and Rebecca," if they did so by the act of 1852.

WM. M. MURPHY, *contra :*

1. Upon the death of Tom, there was no person capable of inheriting his estate. Organ, Miles, and Rebecca could not inherit, as they were slaves ; Malinda and Sarah could not inherit, as they were children born in slavery, and not the issue of lawful wedlock. The marriage of slaves is a nullity.— Smith v. The State, 9 Ala. 990. The child of a slave could not inherit at common law.—Jackson v. Lerry, 5 Cowen 397. Nor could they inherit by the civil law.—See cases cited in 5 Cowen on page 402 ; Taylor's Elements of the Civil Law 429 ; Cooper's Just. 411, 420.

2. The act of emancipation did not legitimate the issue, or legalize the cohabitation of Tom and Charity (No. 1) : 1st, because Tom and Charity (No. 1) were not cohabiting together at the death of their owner ; but, on the contrary, Tom was cohabiting with Charity (No. 2) as his wife, and continued with her to the time of his death ; 2nd, because the act of emanci-

pation does not legitimate the issue; 3rd, because the act of emancipation could not legalize that which was not in existence; 4th, because neither the will, nor act of emancipation, in any way recognize them as the children of Tom; 5th, because the act of emancipation is not retrospective.—5 Cowen 397.

3. There being no lawful heirs of Tom at his death the title vested, *eo instanti*, in the State, and the State can vest the same in a third party, and no inquest of office is requisite in such cases.—Etheridge v. Doe ex dem. Malempre, 18 Ala. 575; 6 Johns. Ch. R. 366.

4. Before the act of 1852, the estate of Tom vested in the State of Alabama by escheat, and by the act of 1852, the General Assembly relinquished it to Charity (No. 2), the last wife of Tom, Malinda, Sarah, Organ, Miles and Rebecca; and this is the act under which Sarah and Malinda claim.

5. The judge of the Probate Court decreed the distribution according to the act of 1852; which provides, that "Charity, Malinda, Sarah, Organ, Miles and Rebecca shall be qualified, in law, to take and inherit the estate, real and personal, of the said Tom, in such portions as it would descend to them by the statute of distributions of this State." Charity (No. 2) is the person meant in the act of 1852.

6. It is contended that Charity, Organ, Miles and Rebecca are not free under the act of 1852. The General Assembly emancipated them by making them lawful heirs and distributees. The Legislature gave them their distributable portions of the estate of Tom, provided they gave bond with sufficient sureties to leave the State within two years. This they have done.

7. As to the constitutional objection, this is not a contest with creditors. The debts of the estate are all paid, and Tom's estate has escheated; the State can certainly relinquish its right of property.

8. The administrator was not chargeable with the legacy bequeathed to Tom by Bartholomew Smith; because there was no proof that he even knew of it, nor that Tom had not collected it in his life-time, nor that the executor ever assented to it.

GOLDTHWAITE, J.—Malinda and Sarah could not claim as heirs proper of their father, for the reason that both the

father and mother were slaves, and persons in that condition are incapable of contracting marriage, because that relation brings with it certain duties and rights, with reference to which it is supposed to be entered into. But the duties and rights which are deemed essential to this contract, are necessarily incompatible with the nature of slavery, as the one cannot be discharged, nor the other be recognized, without doing violence to the rights of the owner. In other words, the subjects of the contracts must cease to be slaves, before the incidents inseparable to the relation of marriage, in its proper sense, can attach. This has always been the doctrine of the civil law (Taylor's C. L. 429; Cooper's Justinian 411, 420; Puff. B. 2, c. 7, § 11); and in every State where slavery exists, and the question has been presented, it has been so decided.—Bynum v. Bostick, 4 Dess. 266; Cunningham v. Cunningham, Cam. & Nor. 353; State v. Samuel, 2 Dev. & Bat. 177; Girod v. Lewis, 6 Mart. La. Rep. 559; Smith v. The State, 9 Ala. 990. There was, indeed, among slaves a permitted cohabitation called *contubernium*, but it brought with it no civil rights. The cohabitation, therefore, between Tom and the mother of Malinda and Sarah, in a state of slavery, was not marriage, or evidence of marriage. It conferred no rights upon the offspring, and created no legal disabilities on the part of the father from forming a valid marriage, whenever he became in a condition which would authorize him to contract one. But the record contains no evidence that this relation existed between himself and the mother of the appellants, at any time after their emancipation; on the contrary, the testimony shows, that before he became free he ceased to cohabit with her, and formed a connection with Charity, one of the appellees, which continued up to his death. As the last woman referred to was also a slave, there could have been no marriage with her, and the children of that connection had no inheritable blood; and the necessary consequence would be, if there were no persons who could claim as heirs at Tom's death, his property would escheat to the State. The State, however, by the act of 12th of January, 1852, relinquished all its right to the property, and conferred upon the appellants and certain of the appellees the right to take the same, which was equivalent to surrendering to them all the rights which it had acquired by the death of Tom without heirs; and the appel-

lants do not stand in a position which will authorize them to insist upon an inquisition as necessary to vest the title in the State; since, having no inheritable blood, they can only take by virtue of the relinquishment made by the State, and if the latter has no title they have none.

Neither can the argument which has been urged on the part of the appellants, that the act of 1852 did not operate to emancipate Charity and her children, Organ, Miles, and Rebecca, be sustained. The act, in express terms, emancipates them, and operates as a grant of freedom to them, subject to be defeated by the non-performance of the conditions which are annexed, but which the record shows have been complied with. It is true, that the constitution prohibts the manumission of slaves without the consent of their owners.—Con. Tit. Slaves. But in the present instance, the Legislature regarded the slaves as the property of the State, and in the capacity of owner the State emancipates them. The validity of this act is not to be questioned, except by one who shows a right of property in himself; and, as we have seen, the appellants do not stand in that situation. The court below, therefore, committed no error, in holding that Charity and her children were entitled to take under the act of 1852.

The only remaining question is, whether the administrator should have been charged with the legacy left to the intestate by the will of Bartholomew Smith. This will, as the evidence shows, was admitted to probate in 1847. Gardner, the appellee, administered upon Tom's estate in 1850; and there is no evidence whatever that he knew the bequest had been made. That the administrator may subject himself to be charged with a debt due his intestate, which has been lost by his negligence or mismanagement, is a clear proposition (Duffee v. Buchanan, 8 Ala. 27); but here there is no proof of either the one or the other. It certainly could not be expected of the administrator, that he should examine every will which was probated, in order to ascertain whether his intestate was entitled to anything under it. Knowledge of the bequest not being brought home to Gardner, we do not think he should be charged with it.

Judgment affirmed.