# LILES vs. THE STATE.

[INDICTMENT FOR MURDER.]

1. *Admissibility of declarations by prisoner and his wife at time of arrest.*—The deceased was last seen in company with the prisoner and his wife, whom he was engaged in moving from an adjoining State ; and they were seen, after his disappearance, pursuing their way in his wagon. A person aided in the arrest, who was acquainted with the deceased and the prisoner, and who testified, that the prisoner's wife, at the time of the arrest, "ran out of the house, and, slapping him on the shoulder, said, 'I told you that, Tommy ;' to which the prisoner replied, 'Go off, God damn you, and hold your tongue, and speak to nobody about it.' " *Held,* that the prisoner's reply to his wife was admissible evidence against him ; and that her exclamation was also admissible, as shedding light on his reply.

From the Circuit Court of Jackson.
Tried before the Hon Wm. S. Mudd.

The prisoner, Thomas Liles, *alias,* Thomas Liles Nix, was indicted and convicted for the murder of one Wallis E. Rose. The only error assigned relates to the admission, against the prisoner's objection, of declarations made by him and his wife at the time of his arrest, which are particularly stated in the opinion of the court.

N. Robinson, for the prisoner, cited McGuire v. Maloney, 1 B. Monroe, 225; Roscoe's Criminal Evidence, 147; 1 Greenl. Ev. §§ 341–2; 2 Starkie's Ev. 402, notes 1 and 2; 2 Russell on Crimes, 981.

M. A. Baldwin, Attorney-General, *contra.*

STONE, J.—In determining how far the conduct of a prisoner may be evidence against him, we feel that we are treading on dangerous and doubtful ground. One of acute sensibilities might be overwhelmed by a simple accusation of crime; while a hardened offender would stand unabashed, and undisturbed in muscle, though conscious of the deepest guilt. A respectable modern writer, speaking of the effect produced by imputation of crime, uses the language, that "it is an impulse of nature, consequent upon

extreme surprise, to which the innocent may yield as well as the guilty. It may happen that the more innocent the party, the greater the shock occasioned by such a proceeding." Burrill on Cir. Ev. 476–7; Smith v. The State, 9 Ala. 990–5.

A further weighty reason, why evidence drawn from this source should be received and weighed with great caution, may be predicated on the fact, known to all who have duly considered the subject, that when suspicion has once taken direction, it seizes upon and magnifies every circumstance, no matter how insignificant it may in itself be. "Trifles light as air" become "confirmations strong as proofs of holy writ."

We have indulged in these general remarks, because, in our opinion, undue influence is frequently accorded to circumstances which are, in themselves, of but little importance. It is not our purpose to lay down a rule which will exclude this species of evidence when pertinent. Our only object is, to guard against an improper use of it.

The question for our decision arose under the following state of facts: The deceased, with his wagon and team, was engaged in moving the prisoner and his wife and children from the State of Tennessee to this State. They were seen in Madison county; the deceased being in company with the prisoner and his family. On the next day, the prisoner and his family, having possession of the wagon and team of the deceased, were seen pursuing their journey. They proceeded to Florence in this State; the prisoner there disposed of the wagon and team, and he and his family proceeded thence to Mississippi. Near the place in Madison county where the prisoner and his family and the deceased were seen in company, the body of the deceased was shortly afterwards found, bearing upon it marks that he had come to his death by violence. When the prisoner was arrested, one Person, who knew both the prisoner and his wife in the state of Tennessee, was present. Immediately after the arrest, the wife of the prisoner, running out of the house, slapped him on the shoulder, and exclaimed, "I told you that, Tommy." The prisoner replied, "Go off, G—d d—n you, and hold your

3

tongue, and speak to nobody about it." This evidence was admitted, against the objection of the prisoner, and raises the only question in the case.

We do not regard this evidence as a confession. It makes no direct allusion to the deceased, nor to the fact or circumstances of his death. Was the reply of the prisoner to the exclamation of his wife, viewed in the light of his conduct on the occasion of his arrest, admissible in evidence against him?

It must certainly be regarded as settled, that in criminal trials, the conduct of the accused, at or about the time the offense is alleged to have been committed, and at or about the time of the arrest, may go in evidence to the jury, as one means of establishing the fact and extent of the defendant's guilt. This species of evidence has been so often received, that we will not undertake to cite the numerous authorities.—See Johnson v. The State, 17 Ala. 624; Martin & Flynn v. The State, 28 Ala. 81.

It is said in Roscoe's Criminal Evidence, 115, that "not unfrequently, a presumption is formed from circumstances which would not have existed as a ground of crimination, but for the accusation itself; such are the conduct, demeanor, and expressions of a suspected person, when scrutinized by those who suspect him." While this is an authority enjoining on courts and jury the duty of exercising great caution in receiving and weighing such evidence, it is nevertheless a direct authority for receiving evidence of the conduct, demeanor, and expressions of the accused.

The argument for appellant seems to assume that the circuit court allowed the declarations of the wife of the accused to be given in evidence against him. We do not so understand the record. The real object in making the proof must have been to lay before the jury the declaration of the defendant. The exclamation of his wife, to which his declaration was a response, was doubtless admitted, because it shed light on the reply of defendant. For that purpose, it was clearly competent.

We think there was no error in admitting the evidence, tending, as it did, to prove the conduct of the prisoner on

Liles v. The State.

the occasion of his arrest.   The fact of his arrest would naturally suggest to him the inquiry why he was arrested. The presence of one, known in the State from which he had recently removed, both to himself and his wife; one, too, who probably knew Rose, the deceased, and knew that he, in company with the prisoner and his wife, had left the State of Tennessee, and had never returned,—was well calculated to impress on the defendant the necessity of great secrecy, if he had perpetrated the murder.   The disappearance of deceased, while the prisoner and his wife were traveling in company with him, was a strong circumstance, tending to show that both the prisoner and his wife knew that he had disappeared, if not that he had been murdered.   Considering the circumstances by which the prisoner was surrounded, and construing his reply in the light afforded by those circumstances, and by his wife's exclamations, we think his remark probably had reference to the murder of the deceased.   He evidently understood her as alluding to something about which he did not wish her to speak; and hence his command that she should be silent.   If there was any other circumstance to which the remark could have related, it was evidently the privilege of the defendant to prove that circumstance, and thus, perhaps, deprive the remark of all tendency to affect him injuriously.

The question in Brock v. The State, 26 Ala. 104, was unlike the one we are considering.   In that case, it was shown that the prisoner's remark referred to a circumstance having no connection with the offense for which he was tried.

It results from what we have said, that there is no error in the record; and the judgment of the circuit court is affirmed.

As the sentence of conviction has been suspended, that the case might be reviewed in this court, it is adjudged that the prisoner be executed by the sheriff of Jackson county, in the manner prescribed by law, on Wednesday, the 11th day of March, 1857, between the hours of 10 o'clock, A. M., and 4 o'clock P. M., by being hanged by the neck until he is dead.   The sheriff of Madison county,

in whose custody said prisoner is lodged for safe keeping, must deliver him to the sheriff of Jackson county, on demand. The prisoner must be executed in Jackson county.