# Cantelou *v.* Doe, *ex dem.* Hood.

*Ejectment by Children, against Sister of Deceased Freedman.*

1. *Marriages among slaves.*—During the existence of slavery in Alabama, slaves were incapable of contracting valid marriages, and their children had no inheritable blood; and since the abolition of that institution, although cohabitations between slaves, existing at the time of emancipation, were declared valid marriages by ordinance No. 23 of the convention of 1867, neither that ordinance, nor the amendatory act approved December 31, 1868, by which its provisions were extended to a subsequent date, gave validity to connections which had terminated before emancipation, nor imparted heritable blood to the children of such connections. (Overruling *Stikes v. Swanson*, 44 Ala. 633; and *Haden v. Ivey;* 51 Ala. 381.)

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JAMES Q. SMITH.

This action was brought by Daniel Hood and Emeline Felder, claiming as the children of Daniel North, deceased, against Margaret Cantelou, to recover the possession of a small lot near the city of Montgomery; and was commenced on the 21st October, 1875. "On the trial," as the bill of exceptions states, "the plaintiffs .proved that Daniel North was, at the time of his death, which occurred in 1870, the owner of the premises sued for; that said Daniel, about

[Cantelou v. Doe, ex dem. Hood.]

thirty years ago, being then a slave, married a woman, who was also a slave, according to the mode of intermarriage usual among slaves at that time in this State, and lived with her as husband and wife, in a state of slavery, from that time until a few years before the emancipation of slaves; that they ceased to live together as husband and wife a few years before the emancipation of slaves; that the plaintiffs are the children of said Daniel and said woman, born in a state of slavery, while their parents were so living together as husband and wife; and that said Daniel recognized them as his children after emancipation. The defendant then proved, that she was the sister of said Daniel North; that said Daniel, after abandoning the plaintiffs' mother, took to himself another wife while he was yet a slave, and continued to live with her as husband and wife until his death in 1870, and always acknowledged and treated her as his wife; and that this woman, after his death, remained in the possession of said premises until her death. This was all the evidence in the case; and the court thereupon charged the jury as follows: "If you find, from the evidence, that Daniel North, now deceased, was the owner of the lot of land sued for, residing on it, and exercising ownership over it at the time of his death; and that said Daniel North and Phœbe Felder, before emancipation, were slaves, and were married, and lived together as man and wife; and that these plaintiffs, Daniel Hood and Emeline Felder, are the children of said marriage; then the plaintiffs should recover the lot, and your verdict will be for the plaintiffs; otherwise, your verdict will be for the defendant.' To this charge the defendant excepted," and requested the court to instruct the jury, among other things, that they must find for the defendant, if they believed the evidence; which charge the court refused to give, and the defendant excepted to its refusal. The charge given, and the refusal of the charge asked, are now assigned as error.

ELMORE & GUNTER, for appellant.

E. J. FITZPATRICK, contra.

STONE, J.—In *Smith v. The State*, 9 Ala. 996, this court said: "Whilst we admit the moral obligation, which natural law imposes, in the relation of husband and wife among slaves, all its legal consequences must flow from the municipal law. This does not recognize, for any purpose whatever, the marriages of slaves." And it was ruled, that the

[Cantelou v. Doe, ex dem. Hood.]

so-called wife of the accused was a competent witness for him.

In *Malinda v. Gardner*, 24 Ala. 719, the claimants asserted the right to a succession, because they were the offspring of a continued cohabitation between persons who were slaves; which cohabitation was a slave marriage, according to the custom then existing. The father of the claimants was afterwards emancipated, and acquired property; but there was no confirmation or recognition of the marriage, after emancipation. This court said, "The cohabitation between Tom and the mother of Malinda and Sarah, in a state of slavery, was not marriage, or evidence of marriage. It conferred no rights upon the offspring." The court further said: "As the woman referred to was a slave, there could have been no marriage with her, and the children of that connection had no inheritable blood." To the same effect, see able opinions by Ch. J. Ruffin, in *The State v. Samuel*, 2 Dev. & Bat. Law, 177; and by Ch. J. Pearson, in *Doe, ex dem. Howard v. Howard*, 6 Jones' Law, 235.

Bishop, 1 Crim. Law, 4th ed. § 156, says, "It is the present established law, wherever slavery prevails in this country, that the marriages of slaves are to be deemed null and void."

In the case of *Hall v. United States*, 2 Otto, 27, will be found a citation of the most important authorities bearing on this question. That case was decided in 1875, long after emancipation; the opinion of the court, delivered by Justice Swayne, being concurred in by the entire court. The court said: "It was an inflexible rule of the law of African slavery, wherever it existed, that the slave was incapable of entering into any contract, not excepting the contract of marriage." And the court decided, that a freedman, after emancipation, could assert no claim to property, by virtue of any right which accrued while he was a slave. The language of the opinion is: "If Hall did contract with Roach, as he alleges he did, the contract was an utter nullity. In the view of the law, it created no obligation, and conferred no rights as to either of the parties. It was as if it were not. This case must be determined as if slavery had not been abolished in Mississippi, and the laws referred to were still in force there. The destruction of the institution can have no effect upon the prior rights here in question."

The lessors of the plaintiff were born slaves, the issue of a slave father and mother, who were, at the time, cohabiting under the sanction of what was known as a slave marriage. Before emancipation, the father and mother had separated, and they never afterwards cohabited. Moreover, before, at the time of, and subsequent to the time of emancipation, he

[Cunningham v. Milner.]

was living in cohabitation with another woman, and he continued such cohabitation until his death in 1870. If ordinance No. 23, of November 30, 1867, or the act amending it, approved December 31, 1868 (Pamph. Acts 1868, pages 175 and 527), exert any influence on the marital relations of Daniel North, father of the lessors, it can not benefit the present plaintiffs. The largest effect it could have, would be to constitute the woman he was cohabiting with at the time of emancipation, his lawful wife. It did not, and could not, legitimate the offspring of the earlier and discontinued cohabitation, or impart to them the capacity to inherit from him.

We are aware that, in *Stikes v. Swanson*, 44 Ala. 633, principles are declared, which are not in harmony with the authorities above cited. *Haden v. Ivey*, 51 Ala. 381, followed, to some extent, the rulings in *Stikes v. Swanson*. We prefer to follow the earlier decisions of this court, and the principles declared in *Hall v. United States, supra;* and we therefore overrule the later two decisions, so far as they conflict with our former rulings.

The charge of the Circuit Court was not in harmony with the views above expressed. According to the agreed state of facts, the lessors of the plaintiff failed to show any title in themselves, and the jury should have been so instructed.

The judgment of the Circuit Court is reversed, and the cause remanded.