# Perkins *v.* The State.

## Indictment for Murder.

1.  *Voluntary offer to confess; admissibility of.*—The prisoner's voluntary offer to the jailer, who had him in charge, to tell all he knew about the homicide of which he was accused, if the jailer would promise that he should not be hurt for it; and his similar offer to a fellow-prisoner, if the latter would promise never to tell any one else; which proposals being rejected, no confessions were made by him,—are admissible evidence for the prosecution.

2.  *Oath of petit jury.*—That they will "well and truly try, and true deliverance make, between *the people* of the State of Alabama and the prisoner at the bar," is not substantially the oath which the statute requires should be administered to the jury in a criminal case (Rev. Code, § 4092); and the administration of such oath is an error for which a judgment of conviction will be reversed.

FROM the Circuit Court of Sumter.

Tried before the Hon. LUTHER R. SMITH.

The prisoner in this case, Ben Perkins, was indicted and

tried, jointly with one Cæsar Clanton, for the murder of Gilbert Roberts; was found guilty of murder in the first degree, and sentenced to imprisonment in the penitentiary for life, while said Clanton was acquitted.   On his trial, the following bill of exceptions was reserved by said Perkins: "Be it remembered, that the following oath, and none other, was administered to each of the jurors in this case: 'You do solemnly swear, that you will well and truly try, and true deliverance make, between the people of the State of Alabama and Ben Perkins and Cæsar Clanton, the prisoners at the bar, whom you shall have in charge, and a true verdict give according to the evidence: so help you God.'   On the trial, the State introduced one Turner Bell as a witness, who testified that, as deputy sheriff, he had the defendant, whom he identified as the colored man Perkins, sitting within the bar as a prisoner, under arrest on a warrant charging him with the murder of Gilbert Roberts; that the day after the homicide, at the request of said Perkins, he locked him up privately with Sol Brown; that Brown called him, after a little while, and said that Perkins wanted to talk with him; that he then went to them; that he had previously made no promises to the defendant, nor threats against him, to induce him to confess, and then made no promises or threats; that all said by said Perkins in his presence was voluntary, so far as he knew; that Perkins took him by the hand, and told him he would tell him all about the killing of Roberts, if he, witness, would promise that he should not be hurt; that he, witness, refused to make any such promise, and thereupon Perkins said nothing more.   Sol Brown, a colored witness for the State, testified that, the day after Roberts was killed, he was locked up with the defendant by said Bell; that he called Bell back at the request of the defendant; that he, during Bell's absence, had made no promises nor threats to said defendant, to induce him to confess, and made no attempt to induce him to confess, and heard no one else do so; that he was alone with said defendant until Bell came back; that all said by defendant in his presence, so far as he knew, was voluntary; that Perkins asked him, twenty times, if he would tell on him, if he told him all about the killing of Roberts; that he refused to so promise, and thereupon defendant said nothing more to him.   To the introduction of each of said alleged statements of the defendant, made to said Bell and Brown, as they were severally offered, the defendant objected and excepted; which objections and exceptions were severally overruled by the court," &c.

A. W. COCKRELL, for the prisoner, cited *Lewis v. The State*.

[Perkins v. The State.]

51 Ala. 1; *Newman v. The State*, 49 Ala. 9; *Mose v. The State*, 36 Ala. 211; *Williams v. The State*, 39 Ala. 532.

JOHN W. A. SANFORD, Attorney-General, for the State.

MANNING, J.—The bill of exceptions in this cause does not undertake to set forth the evidence, further than was thought necessary to present the questions which were argued here. The testimony of the jailer and of Sol Brown is not of any confessions made by the prisoner, but of his taking the hand of the jailer, and offering to tell all he knew about the killing of Roberts, if the jailer would promise that he, the prisoner, should not be hurt therefor, and of like offers to tell the same to Brown, if Brown would promise never to tell anybody else; and both of the witnesses having refused to make such a promise, the prisoner said nothing more to them on that subject. No inducement or influence, proceeding from either of the witnesses, or any other person, caused the prisoner to say or do anything, of which evidence was given. This evidence was, therefore, not subject to exclusion, upon the ground that the prisoner did not act freely; and it was admissible to show circumstances which, connected with other circumstances and facts, might properly be considered by the jury, in their endeavors to determine whether the prisoner was guilty or not of the crime of which he was accused.

Suspicious conduct on the part of a person, who was in a situation in which he might have killed another, is frequently allowed to be proved in prosecutions for homicide. Of course, jurors should be careful not to attach to such circumstances too much importance, and be watchful over themselves, to avoid being led to conclusions which those circumstances do not very forcibly conduce to support. There is a just caution against too much facility in this, contained in the opinion in *Lyles v. State*, 30 Ala. 24.

2. In *Lewis v. State* (51 Ala. 1), it was held, that an oath like the one administered in this cause—"to well and truly try, and a true deliverance make, between the *people* of the State of Alabama and the prisoner at the bar"—was "not substantially the oath required and prescribed by statute," and was, therefore, insufficient. It is pointed out in the opinion that the constitution commands that "all prosecutions shall be carried on in the name, and by the authority, of 'The State of Alabama,' and conclude against the peace and dignity of the same," ' and are in fact so instituted and conducted; and that when, exceeding the particularity required by the statute, the jury are sworn to try an issue

joined between "the *people* of the State of Alabama" on one side, and the accused on the other, the oath is vitiated, by being restricted to a prosecution different from that in which the verdict is rendered.

Let the judgment be reversed, and the cause be remanded. The prisoner must remain in custody, until discharged by due course of law.