FREDERICK H. MERRICK & others *vs.* GEORGE F. BETTS.

Middlesex.    January 14, 1913. — March 14, 1913.

Present: RUGG, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Marriage and Divorce. Slavery. Evidence,* Presumptions and burden of proof.

At common law, before the abolition of slavery, slaves actually held in slavery in a slave state could not contract a lawful marriage and have legitimate issue.

The fact, that a testator in his will names a certain person as his grandchild, while it is evidence that such person was his legitimate descendant, is not conclusive evidence of that fact.

WRIT OF ENTRY, dated October 14, 1909.

The case was heard in the Land Court by *Clark,* J., who found for the demandants. On appeal to the Superior Court, issues were framed, of which the following are material to the decision:

"1. What relation, if any, did the demandants, and each and all of them, bear to the testator, Frederick Merrick?

"2. Did said Frederick Merrick at the time of his decease leave any issue? If so, whom?"

The issues were tried before *Morton,* J.

The demandants claimed title under the will of one Frederick Merrick, by which the locus, after the death of certain life tenants,

which had occurred, was devised to the testator's "heirs." The will also made a devise to "to my Grad children Mary Jane and Cora Howe of Wilmington, N. C."

It appeared that Frederick Merrick, the testator, and Joseph and Polly Merrick (afterwards Betts) were born in North Carolina of the same slave parents before the civil war, and that the testator obtained his freedom and had come North in 1859 and had died at Cambridge in 1888, leaving a widow and no issue. The demandants were children of Joseph Merrick and of Polly Merrick Betts.

There was evidence that the Mary Jane and Cora Howe mentioned in Frederick Merrick's will were children of a woman whom he had acknowledged in North Carolina to have been his daughter.

The demandants relied solely on the report of the judge of the Land Court, which stated that the demandants were the heirs at law of Frederick Merrick.

At the close of the evidence the tenant asked for the following, rulings:

"1. That question numbered 1 of the issues framed for the jury be answered as follows: Under the evidence in this case the demandants have not or any or either of them, any relation or kinship to the said testator, Frederick Merrick. That they are not or either of them, heirs at law of said testator.

"2. That question numbered 2 of said issues be answered as follows: Yes, the issues of the said testator, Frederick Merrick at the time of his decease were Mary Jane and Cora Howe, the granddaughters mentioned in the will of the said testator.

"3. The demandants to recover must rely upon the strength of their own title and not upon the weakness of the tenants.

"4. That in view of the evidence presented in this case judgment be returned for the tenant and that the petition of the demandants be dismissed."

The presiding judge refused to rule as requested, ruled that the marriage of the father and mother of Frederick Merrick was lawful and that the demandants were nephews and nieces of Frederick Merrick, and left it to the jury to determine whether Mary Jane and Cora Howe were his legitimate grandchildren.

The answer of the jury to the first issue was: "The nephews

and nieces as named in the report of the judge of the Land Court;" and to the second, "No."

The tenant alleged exceptions.

*C. G. Morgan,* for the tenant.

*S. Parsons,* for the demandants.

SHELDON, J. The report made by the judge of the Land Court of his decision and findings of fact rightly was admitted, and furnished *prima facie* evidence as to the matters therein contained, because the action was brought in 1909, while St. 1905, c. 288, was in force. It comes within the saving clause of St. 1910, c. 560, § 8, as to any cause then pending. *Bishop* v. *Burke,* 207 Mass. 133, 139. *Bigelow Carpet Co.* v. *Wiggin,* 209 Mass. 542, 548. Accordingly the tenant's first and fourth requests for rulings could not have been given. The matter of the second request was a question of fact for the jury, and so the second request rightly was refused. The third request was merely an abstract statement of law, and was sufficiently covered by what was said to the jury.

But the judge at the trial overruled as matter of law the tenant's contention that slaves held as such in slave states before the civil war could not marry, and ruled that under proper conditions they could marry and have legitimate issue. He explained his meaning as to this by his statement to the tenant's counsel that the marriage between the father and mother of Frederick Merrick was a lawful marriage. The evidence was that these parties when married were slaves in North Carolina, and that the marriage took place there in 1859. The question presented by the tenant's exceptions to these rulings is whether such a marriage was lawful at common law.

The tenant has contended that the marriage was at any rate unlawful by the local law of North Carolina; but no evidence of that law was put in and we now can refer to the decisions of that State only as evidence of the common or general law upon this subject, just as we may refer to any decisions made elsewhere. *Miller* v. *Aldrich,* 202 Mass. 109, 113.

Nor can we rest upon the presumption that the common law of North Carolina, as distinguished from the statutory law, is like our own; for we do not find that the present question has been settled here. It is true that when, before the adoption of

our Constitution in 1780, slavery existed in this Commonwealth, the right of negro slaves to marry persons of their own race was recognized; but it has not been shown that this was so before the enactment of the provincial statute of 1705–6, c. 10, § 5. Indeed, it is stated in a note to *Oliver* v. *Sale,* Quincy, 29, that the right to marry was secured to slaves by this act, and we find nothing to the contrary in other decisions made here. *Winchendon* v. *Hatfield,* 4 Mass. 123. *Littleton* v. *Tuttle,* 4 Mass. 129, note. *Jackson* v. *Phillips,* 14 Allen, 539, 563. *Irving* v. *Ford,* 179 Mass. 216, and 183 Mass. 448, 449. And see 2 Dane's Abr. 313.

Looking at the decisions made in other courts under the common law, the great weight of authority appears to be that slaves while held as such were incapable of contracting a valid marriage and of having legitimate offspring. It was declared by the Supreme Court of the United States, in *Hall* v. *United States,* 92 U. S. 27, 30, to be "an inflexible rule of the law of African slavery, wherever it existed, that the slave was incapable of entering into any contract, not excepting the contract of marriage." In *Emerson* v. *Howland,* 1 Mason, 45, 51, Story, J., said that in Virginia "the owner of the slave has the most complete and perfect property in him. . . . He has no civil rights or privileges. He is incapable of making or discharging a contract; and the perpetual right to his services belongs exclusively to his owner." The wretched condition of slaves (and even of free negroes) and their utter deprivation of all civil rights were described in the opinion of Taney, C. J., in the *Dred Scott case,* 19 How. 393; and however the authority of that decision may have been shaken by later events, the accuracy of his statements as to negro slaves has not been disputed, and these statements, like those of Ruffin, J., in *State* v. *Mann,* 2 Dev. (N. C.) 263, 265, have furnished convincing evidence of the injustice and inherent wickedness of the institution itself.

In New York, the right to marry was given to slaves by statute; but the court strongly inclined to the opinion that but for the statute they could have had no such right. *Jackson* v. *Lervey,* 5 Cow. 397, 402.

The question was directly raised in other courts, and it was held that slaves could not marry or have legitimate issue. *State* v. *Samuel,* 2 Dev. & Bat. (N. C.) 177. *Howard* v. *Howard,* 6

Jones, (N. C.) 235. *Scott* v. *Raub,* 88 Va. 721, 723. *Smith* v. *State,* 9 Ala. 990, 996. *Malinda* v. *Gardner,* 24 Ala. 719. See also the cases collected in 19 Am. & Eng. Encyc. of Law, (2d ed.) 1169; 25 *ibid.* 1100; 36 Cyc. 487; Cobb on Slavery, § 270.

We of course cannot consider the effect of any statutory provisions that may have been made in North Carolina since emancipation, touching the relations between emancipated negroes who, while held in slavery, had lived together as husband and wife. There are references to many such statutes in the reports of different States. Besides some cases already cited, see *State* v. *Adams,* 65 N. C. 537, and the references in 1 Bishop on Marriage, Divorce & Separation, § 668, and in 36 Cyc. 493.

The demandants have suggested that, even if the marriage of the testator's parents was invalid, and his birth was not legitimate, they would yet be entitled to recover in this action on the ground that under our statute, now contained in R. L. c. 133, § 4, his mother would inherit from him and they would take title as her descendants. *Parkman* v. *McCarthy,* 149 Mass. 502. But the case was not tried upon that issue, and we cannot pass upon it.

The mention in the testator's will of Mary Jane and Cora Howe as his grandchildren affords some evidence that they were his legitimate descendants; but it is not conclusive.

*Exceptions sustained.*