(95 South. 655)

**BYRD v. STATE.** (6 Div. 732, 733.)

(Supreme Court of Alabama. Jan. 11, 1923. Rehearing Denied Feb. 1, 1923.)

1. **Homicide** ⬦166(2)—**Evidence of altercation previous to homicide held competent as showing a motive.**

In a prosecution for murder, it was competent for the state to prove an altercation previous to the homicide between defendant's sister, her nephew, and deceased; the fact of such altercation having been communicated to defendant and intended to establish a motive.

2. **Homicide** ⬦166(2)—**Details of quarrel between defendant's sister and deceased prior to homicide held inadmissible.**

In a prosecution for murder, it was error to permit defendant's servant to detail all that was said and done between defendant's sister and deceased during a quarrel previous to the homicide.

3. **Criminal law** ⬦1169(5)—**Witnesses** ⬦414(2)—**Evidence that one to whom defendant had confessed repeated confession to others held improper corroborative evidence.**

In a prosecution for murder, it was improper for the state to corroborate or bolster the testimony of defendant's servant, by showing that the servant had repeated defendant's confession to others, and admission of such testimony was not cured by a subsequent exclusion.

4. **Criminal law** ⬦726—**Remark by state's attorney that witness ought to be hit with an axe, which he presented to her, being provoked by defendant's counsel, held not error.**

In a prosecution for murder with an axe, remarks of the deputy solicitor, when present-

ing the axe to the witness, "I am not going to hit her with it, I think she ought to be hit with it," while improper, was not reversible error, it having been provoked by defendant's counsel, who admonished the solicitor not to hit her with it.

5. **Criminal law** ⬦726—**Remarks of counsel provoked by improper remarks of party's own counsel cannot be complained of.**

A party cannot complain of the remarks of counsel which were provoked by the improper remarks of his own counsel.

6. **Criminal law** ⬦720(5)—**Remarks of state's counsel that he intended to show bribery of witness held improper.**

In a prosecution for murder, it was improper for the deputy solicitor to state that he was going to prove that a certain person had offered to bribe a witness; no evidence of bribery being offered.

7. **Witnesses** ⬦372(2)—**State may on cross-examination show efforts to tamper with witnesses or to suppress evidence.**

In a prosecution for murder, it was the right of the state to cross-examine defendant's witnesses as to whether they had been influenced to change their evidence or had been tampered with in testing the credibility of their evidence and to show that defendant had been attempting to change or suppress evidence.

Appeal from Circuit Court, Jefferson County; Wm. E. Fort, Judge.

Lillie Byrd was separately indicted for the murder of Susie Mantione and of Joe Mantione. The two cases were tried together, and the jury returned separate verdicts, finding the defendant guilty in each case of murder in the first degree. From the judgments rendered on the verdicts, defendant appeals. Reversed and remanded.

Susie and Joe Mantione were killed in their store residence. Their skulls were crushed, and a bloody axe was found near by. Defendant lived in a house next door to the Mantiones. There was evidence tending to identify the axe there found as the property of the defendant.

The evidence of Bertha Weaver was to the effect that she worked for the defendant; that on the day after the killing defendant told her that she and one Pete Jenkins, or "Beechum" (defendant's nephew), went to the back door of the Mantiones' store and called for certain purchases; that when Joe Mantione stooped down to get the goods called for, Beechum struck him with an axe; that one Charlie Hawkins, who frequented the defendant's house, also took part in the killing. This witness testified that she had told officers and others what the defendant had told her. She further testified that she was present at the Mantiones' store the day before the killing when a "squabble" took place between Susie Mantione and Mary Byrd, the sister of defendant. Over the ob-

jections of the defendant, the witness was permitted to detail the quarrel. She further testified that in the afternoon, following this quarrel, Pete Jenkins, or Beechum, came to defendant's house, and that defendant told him of the occurrence, and that Jenkins said that he would settle it.

L. M. Houser, a witness for the defendant, on cross-examination was questioned by the solicitor as to statements made prior to the trial that he (the witness) was intimidated by one Bob Taylor (who, it appears, was intimate with the defendant and actively interested in her behalf), to the extent of being afraid to testify against the defendant. This witness denied being so intimidated and denied making any such statements.

The witness Henry Wilson, called by the defendant, having testified to the bad character of Bertha Weaver for truth and veracity, was asked by the solicitor on cross-examination as to his relations with Bob Taylor and whether or not he was afraid of Taylor. The defendant having objected to a question, the solicitor stated:

"I am going to prove that Bob Taylor has offered to bribe this old negro out here, Houser."

Louis Silberman and William Vaughan, both of Birmingham, for appellant.

Questions tending to elicit illegal, incompetent, and irrelevant evidence should be excluded on motion. Motive cannot be shown by an altercation between deceased and a third party. Constant repetition by the solicitor, in the presence of the jury, of what he intends to prove, is prejudicial to the defendant. 114 Ala. 1, 22 South. 71; 133 Ala. 43, 31 South. 953; 90 Ala. 596, 8 South. 670; 99 Ala. 236, 13 South. 575; 104 Ala. 83, 16 South. 108; 170 Ala. 72, 54 South. 494; 159 Ala. 51, 48 South. 662; 151 Ala. 80, 44 South. 398; 16 Ala. App. 61, 75 South. 267; 199 Ala. 411, 74 South. 454; 78 Fla. 167, 82 South. 780; 79 Fla. 189, 84 South. 535; 75 Ind. 22; 17 Ala. App. 679, 88 South. 203; 181 Ala. 90, 61 South. 801.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

It is always permissible to introduce testimony which tends to show a motive for the commission of a crime. 4 Michie, Ala. Dig. 128. Witnesses may be cross-examined as to irrelevant matters for the purpose of determining credibility for bias. 12 Michie, Ala. Dig. 1211, 14 Michie, Ala. Dig. 1148.

ANDERSON, C. J. [1, 2] The state no doubt had the right to prove a fuss or altercation, previous to the homicide, between the defendant's sister Mary Byrd and the aunt of Peter Jenkins, alias "Beechum," a claimed conspirator with the defendant, and "Susie Mantione," the deceased, inasmuch as the fact had been communicated to the defendant and said "Beechum," as a circumstance of ill will tending to establish a motive and to also prove the response of said "Beechum" which the jury might consider as a threat. But the trial court erred in permitting Bertha Weaver to detail all that was said and done between Mary Byrd and the deceased during the fuss or quarrel. These particulars would not have been admissible had the defendant, instead of her sister, been a party to the fuss. Lawrence v. State, 84 Ala. 424, 5 South. 33; Jones v. State, 116 Ala. 468, 23 South. 135. These facts and details were calculated to be of great prejudice to the defendant as well as her sister who was a witness in the case. The jurors were presumably white men, the deceased was a white woman, while the defendant and her sister are negroes and a repetition of the epithets applied to the deceased by said Mary Byrd was calculated to arouse the passion and prejudice of the jury; and for the admission of this evidence alone, if no other error appeared, this case would be reversed.

[3] This record presents a harvest of objections and exceptions throughout the trial, many of which were without merit, and it would not only be irksome to do so but a discussion of same can serve no good purpose. It is sufficient to say that the effort of the state to corroborate or bolster the testimony of Bertha Weaver by showing that she repeated the confession of the defendant to others was improper, and, while the trial court subsequently excluded same, it was permitted to remain with the jury a considerable time, and was accentuated by the persistent insistence and argument of the deputy solicitor as to its admissibility.

[4, 5] As to the remarks of the deputy solicitor when presenting the axe to the witness, "I am not going to hit her with it, I think she ought to be hit with it," they were, of course, improper. This was realized by the solicitor, who promptly withdrew same and, in effect, apologized for making said remarks. We think, however, these remarks were more pardonable than a few other statements made during the progress of the trial, especially in view of the fact that it was in the nature of a retort to an admonition from defendant's counsel, "Don't hit her with it." While this record discloses considerable zeal and aggressiveness on the part of the deputy solicitor in the prosecution of this cause, it is inconceivable that his manner was so bloodthirsty and belligerent as to have impressed counsel for the defendant that he was in the act of committing the identical deed for which he was then prosecuting the defendant, and the admonition of counsel for the defendant was unjustified and provoked the retort in question. A party cannot complain of the remarks of counsel which were provoked by the improper re-

marks of his own counsel. Tea Co. v. Saxon Co., 207 Ala. 33, 91 South. 885; Hanners v. State, 147 Ala. 27, 41 South. 973.

[6] It was improper for the deputy solicitor to have stated and repeated:

"I am going to prove that Bob Taylor has offered to bribe this old negro out here, Houser."

Another witness, Henry Wilson, was on the stand at the time and gave no evidence tending to show that Bob Taylor had offered to bribe Houser, nor was this fact proven by any witness. Houser had denied the fact when on the stand and the nearest approach to proving same was by a previous statement made by Houser out of court which was used to impeach him and which did not and could not prove the offer to bribe. Moreover, if the deputy solicitor expected to prove this fact, he could and should have done so without making the remark at an improper time.

[7] The state, of course, had the right to cross-examine the defendant's witnesses as to whether or not they had been influenced to change their evidence or had been tampered with in testing the credibility of their evidence and to show that the defendant through her friend or agent Bob Taylor had been attempting to change or suppress evidence. Whatley v. State, 96 South. 605;[1] Liles v. State, 30 Ala. 24, 68 Am. Dec. 108; Levison v. State, 54 Ala. 519; Jones on Evidence, §§ 17, 287.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

SAYRE, GARDNER, and MILLER, JJ., concur.