# DANIEL OTMER

*v.*

# THE PEOPLE OF THE STATE OF ILLINOIS.

1. EVIDENCE—*instruction as to the credibility of witness.* On the trial of a party indicted for murder, the defendant was sworn and testified, and the court instructed the jury that if they believed, from all the evidence, that he had knowingly sworn falsely in regard to any material point in the case, they *ought to* disregard his testimony on all material points, except so far as he was corroborated by other evidence in the case: *Held,* that the instruction was erroneous. It would have been proper if it had told the jury they *might* disregard his testimony, etc., leaving the jury to determine for themselves whether to give his testimony any weight.

2. SAME—*sufficiency of circumstantial evidence to convict.* What circumstances will amount to proof, can never be matter of general definition. The legal test is, the sufficiency of the evidence to satisfy the understanding and conscience of the jury. Absolute certainty is not essential to proof by circumstances, but it is sufficient if they produce moral certainty to the exclusion of every reasonable doubt.

3. SAME—*instruction as to sufficiency of circumstantial evidence.* On the trial of one for murder, the court instructed the jury that if they believed, from the evidence, beyond a reasonable doubt, that the accused deliberately and intentionally shot and killed the deceased, as charged, they should find the defendant guilty; and that in such case, it mattered not that the evidence was circumstantial, or made up from facts and circumstances, provided the jury believed such facts and circumstances pointing to his guilt to have been proven beyond a reasonable doubt: *Held,* that the latter part of the instruction was calculated to mislead the jury. It should have left it to the jury to further find whether such facts and circumstances were sufficient to satisfy their minds and consciences of the defendant's guilt.

4. NEW TRIAL—*in criminal case.* Where a defendant was convicted of the crime of murder, in the shooting of another while he was travelling along the public highway, and a witness whose credibility was not impeached, and whose testimony seemed to be reliable, testified that at the time of the shooting, the defendant was at her house, some six or seven hundred yards distant from where the shooting took place, and had been there for some time before, it was *held,* that this evidence was such as to raise a reasonable doubt of the defendant's guilt, there being no

positive testimony that he did the shooting, but only facts and circumstances tending to prove that he did it, and the judgment was reversed, and remanded for a new trial.

WRIT OF ERROR to the Circuit Court of Hancock county; the Hon. JOSEPH SIBLEY, Judge, presiding.

Messrs. SCOFIELD & HOOKER, and Messrs. MARSH & MARSH, for the plaintiff in error.

Mr. B. F. PETERSON, State's Attorney, and Messrs. LANE & FINLAY, for the People.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an indictment against Daniel Otmer, in the county of Hancock, for the murder of one Jacob Jingst.

At the October term, 1874, of the circuit court of Hancock county, a trial was had before a jury, which resulted in a verdict of guilty against Otmer, and he was sentenced to imprisonment in the Penitentiary for a term of thirty years.

The defendant brings the record here by writ of error, and, to reverse the judgment of the circuit court, relies upon two errors.

*First.* That the court erred in giving instructions Nos. 5 and 7½ for the people.

*Second.* That the verdict of the jury is not sustained by the evidence.

The fifth instruction given for the people, to which exception was taken, is as follows:

"That if the jury believe, from the evidence, beyond a reasonable doubt, that the defendant deliberately and intentionally shot Jacob Jingst on or about the 14th day of October, 1873, in Hancock county, Illinois, as said Jingst was passing along the public road, and that from the effects of such shooting the said Jingst died, as charged in the indictment, then the jury should find the defendant guilty; and in that case it matters not that such evidence is circumstantial,

or made up from facts and circumstances, provided the jury believe such facts and circumstances pointing to his guilt to have been proven beyond a reasonable doubt."

It is said in Starkie on Evidence, vol. 1, sec. 79, "What circumstances will amount to proof, can never be matter of general definition. The legal test is, the sufficiency of the evidence to satisfy the understanding and conscience of the jury. On the one hand, absolute, metaphysical and demonstrative certainty is not essential to proof by circumstances. It is sufficient if they produce moral certainty to the exclusion of every reasonable doubt; even direct and positive testimony does not afford grounds of belief of a higher and superior nature."

While the jury have no right to acquit upon trivial suppositions and remote conjectures, yet they should not " condemn unless the evidence exclude from their mind all reasonable doubt as to the guilt of the accused."

Although the instruction was carefully drawn, yet the latter clause of it was calculated to mislead the jury.

The jury may have believed the facts and circumstances pointing to defendant's guilt were proven, and yet they may not have regarded the facts and circumstances so proven sufficient to satisfy their understanding and conscience of the defendant's guilt, but notwithstanding this, they were told by the instruction it was their duty to convict.

Before the jury could be justified in returning a verdict of guilty, they should have believed the facts and circumstances pointing to defendant's guilt proven beyond a reasonable doubt, and that these facts and circumstances in proof were sufficient to establish upon the defendant the crime of which he was charged, beyond such doubt.

Instruction No. 7½, complained of, was as follows:

"The court instructs the jury that, if they believe from all the evidence, that the defendant has knowingly sworn falsely in regard to any material point in this case, they *ought to*

disregard his testimony on all material points, excepting so far as he is corroborated by other evidence in the case."

The word "ought," as here used, means, in its ordinary sense, to be held or bound in duty or moral obligation.

We understand it to be a rule of law, well settled, that the jury are the sole judges of the weight to be given to the testimony of each witness. It is also the peculiar province of the jury to pass upon and determine the credibility of a witness.

In the case of *Chittenden* v. *Evans*, 41 Ill. 251, where the court instructed the jury that the evidence of one witness, with corroborating evidence, was entitled to greater weight than the evidence of another witness, this court held the instruction erroneous, and said, while this may be true as a matter of fact, it is certainly not so as a rule of law.

On the trial of a cause, the court should leave the jury perfectly free and untrammeled to pass upon the credibility of each witness, and to determine for themselves the weight to be given to the evidence.

In no other manner can they properly exercise the functions given them by our laws as judges of the facts, and in no other way can justice be properly administered under our system of trial by jury

This instruction was erroneous for the reason that it usurped the province of the jury, and directed them that they *ought* absolutely to disregard the evidence of the defendant upon a certain contingency. That it would have been proper for the court to have instructed the jury that they *might* disregard the evidence of the defendant, if they believed from the evidence he had knowingly sworn falsely upon a material point, except so far as he was corroborated by other evidence, is undoubtedly true; but in lieu of doing this, when the court directed them in absolute terms, this took away their rights as jurors, and did not allow that unbiased deliberation which was due to the defendant from the jury, when his life was in their hands.

The last point relied upon by the defendant is, that the verdict is not sustained by the evidence.

We have examined the testimony with care, and while we are reluctant to disturb the verdict of a jury upon this ground, yet we are satisfied, from an inspection of the whole record, that the sacredness of individual rights demands, and the interest of society requires, that another jury should pass upon the case.

If the defendant is guilty of the crime with which he stands charged, he should be convicted and suffer the penalty of the law. If, on the other hand, he is innocent, a due regard for the rights of all, and a proper administration of the laws, require that he should be acquitted.

While we do not propose to enter upon a discussion of the evidence, or in any manner prejudice another trial by what we may say in regard to the testimony, yet the record before us contains evidence upon one branch of the case, which seems to be entirely reliable, and which, when it is given due weight, raises a doubt so serious, in regard to the guilt of the defendant, that we can not, in due regard to the rights of the defendant, under the law, decline to remand for another trial.

We allude to the evidence of Mrs. Henike, which tends to establish the fact that at the very time Jingst was shot and received the wounds from which he died, on the road from Warsaw to his residence, the defendant was at the house of Mr. and Mrs. Henike, a distance of six or seven hundred yards from the place where the crime is alleged to have been committed.

The deceased lived about one mile from Warsaw. On the 14th of October, 1873, about sunset, he went to Warsaw with a load of corn, and returned in about one hour. A short time after dark, while riding in his wagon on the road home, he was shot by some one, and from the effects of the wounds received he died.

Mrs. Henike testified that, on the day of the murder, she had been to Warsaw, with her children, and returned at sundown; that the defendant was at her house, and took her horse and unharnessed him, and then went into the house and remained there until a messenger came with the news that deceased had been shot.

If it be true, as the evidence of this witness tends to show, that the defendant, from sun-down until the crime was committed, was all the time at her house, then it can not be pretended he is guilty of the crime ; and as the evidence at least raises a serious doubt in regard to defendant's guilt, we are of opinion the facts should be submitted to another jury.

For the errors indicated, the judgment will be reversed, and the cause remanded for another trial.

*Judgment reversed.*