GEORGE C. SCHOOLCRAFT *et al.*

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Mt. Vernon June 12, 1886.*

1. CRIMINAL LAW—*threats—by one of several defendants.* On the trial of three brothers for murder, the court admitted in evidence a statement of one of the defendants, made some time before the killing, to the effect that in speaking of a difficulty he had with the deceased, the defendant said he was "part Indian—bad medicine," and that something serious would grow out of this trouble: *Held,* that the evidence was properly admitted against the defendant who made the statement, and was pertinent, as tending to show a threat by him.

2. SAME—*evidence—apprehension of danger by deceased, from others than the accused—on a trial for murder.* On the trial of three brothers for the murder of one with whom they had a difficulty, and toward whom they entertained feelings of enmity, defendants offered to prove by a witness that the deceased said to him a few days before he was killed, that he expected some of those fellows with whose wives he had been running, would kill him some day, which the court, on objection, refused to admit: *Held,* no error in excluding the same, the offer not being of the evidence of any fact relevant to the issue, but a mere statement of apprehension on the part of the deceased.

3. SAME—*circumstantial evidence—reasonable doubt - of an instruction in respect thereto.* On a trial for murder, the court, on behalf of the People, instructed, "that if the jury believe, from the evidence, beyond a reasonable doubt, that the defendants deliberately and intentionally shot M., in manner and form as charged, as he was passing along the public highway, and that from the effects of such shooting the said M. died, as charged in the indictment, it matters not that such evidence is circumstantial, or made up from facts and circumstances, provided the jury believe such facts and circumstances pointing to his guilt, to have been proven, beyond a reasonable doubt, by the evidence:" *Held,* that the instruction was not erroneous, as requiring the jury to convict without regard to whether the facts and circumstances so proved were sufficient to satisfy them of defendants' guilt beyond a reasonable doubt.

WRIT OF ERROR to the Circuit Court of Hamilton county; the Hon. C. C. BOGGS, Judge, presiding.

Mr. F. B. STELLE, and Messrs. WILSON & LESLIE, for the plaintiffs in error.

Mr. George Hunt, Attorney General, for the People.

Mr. Justice Sheldon delivered the opinion of the Court:

At the February term, A. D. 1886, of the Hamilton county circuit court, George C. Schoolcraft, James H. Schoolcraft and Marion Schoolcraft were indicted, tried for, and convicted of the crime of murder of John Mann, and were sentenced, each, to imprisonment in the penitentiary for the term of twenty-five years. By writ of error they bring the record here for review.

It is insisted the verdict of the jury was contrary to the evidence. It appears that on the Friday morning of February 19, 1886, John Mann was shot on the public highway leading south from McLeansboro to Broughton, in this State, from ambush, apparently with a shotgun, and afterwards with a pistol, and died almost immediately from the effect of the shots. He was struck on the neck, shoulder and back with one hundred and ten shot, and was shot twice in the left side of the face, apparently with a pistol. The deceased was on horseback when he was shot, and was crossing a swamp about two miles wide. He left his home about seven o'clock that morning, to go along the public road, south, to the "Bullard place," to measure some corn. He put his paper money in his vest pocket, and his silver in his pants pocket. A witness who was passing along on the road with a team that morning, testifies that while crossing the swamp he saw deceased's horse loose in the road, with saddle on, and deceased lying in the road, and when he came up to him he was breathing his last; that he heard two loud reports of a shotgun, and then two pistol shots, before coming to the body, when about a quarter of a mile away; that he heard the shots a little after eight o'clock; that the right pants pocket of deceased was turned wrong side out, the vest was open, and the inside vest pocket turned wrong side out. No money was found on

the body. There was what the witness describes a "blind" erected west of the road, twenty-three steps from the body, behind a large stump, and a log on the north side, and leafy brush on the other side, and the brush cut away between the blind and road. Hazel and briar thickets were on both sides of the road where deceased was killed. Tracks were found going north-west one hundred yards or more, then south-west. It is four miles from Broughton to where deceased was killed, Broughton being south-east. George C. Schoolcraft lived two and a half miles west of Broughton, and two and one-half miles south of where deceased was killed. James H. Schoolcraft lived with George, and Marion Schoolcraft lived with his mother, about one mile or one mile and a half north-west of the place of the homicide. The three defendants are brothers, George being married and having a family, James H. a young man, and Marion a boy, as said by defendants' attorney. All three stayed at George's the night before the homicide. They ate breakfast there on the morning of the homicide, and, as testified by themselves and others of the family, James H. started to his work on that morning, where he and a relative of his were making ties on the Sanders land, north of George's and near the swamp. Marion started home, and accompanied James H. until they came to a turn in the road, where they separated, James H. going toward his work, and Marion going north, along the road. George started to Broughton. The person with whom James H. was to work did not come, and the latter went on to Broughton. Afterwards, in the course of that day, they were all three together in Broughton.

The witness Kendall testified that he lived on the south side of the swamp, north of Sanders, and one and a half mile from where deceased was shot; that about seven or eight o'clock on the morning of February 19, 1886, he saw two persons going north through his clearing, whom he took to be James H. and Marion Schoolcraft.

18—117 ILL.

Jacob Ross, Sr., who lives three-quarters of a mile from where deceased was killed, and north of Kendall, testifies that deceased was killed north-west of his house; that on the morning in question he saw two men in Mary Mann's field, going north-west, in the direction to left of where deceased was killed. Three other witnesses testify to seeing these two persons together in the same vicinity that morning, going north. There is no doubt, from all the evidence, that the two persons were James H. and Marion Schoolcraft. They were not seen to have a gun.

George Trout testified, that on that morning he and his boys were going down into the bottom to make ties; that before they got to the bridge they saw Marion Schoolcraft coming up the road; that the latter came on till he got to the bridge, and waited there till witness came up; that witness and his boys stopped there and talked with Marion, and while so talking, John Mann, the deceased, came along and spoke; that Marion Schoolcraft started on toward his home, and they started to their work; that just after Marion left he sung or hallooed at the top of his voice; that witness went on to his work, and before he got there he heard two big guns in rapid succession, and then, in a little time, two smaller ones; that it was a half-mile from the bridge, where deceased passed, to the place where he was killed; that Marion usually sang loud, "more of a halloo than a sing," and was almost always singing. The witness testified, that that night Marion Schoolcraft, on his return from Broughton, stopped at witness' house, and asked witness if he knew who was suspected of the murder. Witness told him he did not, and Marion said to him, "Uncle George, if I was arrested you could clear me, for you saw me at the bridge when John Mann passed."

The witness Frazier testified, that on the night of the murder Marion Schoolcraft came over to his house, and in conversation on the subject, inquired of witness who was accused. Witness answered he did not know, when Marion

said if he was arrested for it he could prove himself clear by George Trout and his boys, as he saw them on the bridge that morning.

The evidence tends to show there were two sets of tracks about the body,—a large, and smaller one; that the larger one corresponded with the measurement of James H. Schoolcraft's boots; that there was a peculiarity in it, in the toe of the right turning a little in, and that James H. walked with that toe a little turned in. The evidence makes it improbable that George Schoolcraft was present at the place of the homicide when it was committed.

There was evidence of a hostile feeling of the defendants toward the deceased, of difficulties between them, of an old trouble between George and the deceased, and of numerous threats made by George against the life of the deceased, and of some threats against the deceased made by the other two defendants. The witness Trout testified, that on the night of February 14, 1886, he stayed with George Schoolcraft; that the latter talked about the lawsuit with Mrs. Bullard; said John Mann had talked of having him arrested about the Bullard matter, and he had told him he would be at court, and if he, Mann, wanted anything out of him he could get it; that the next morning George told him he had his shotgun double-loaded, with powder and shot in proportion, and he need not be surprised to hear of John Mann being found dead, filled full of shot, with his pockets turned wrong side out; and that on the same morning, as they were walking along the road together, Marion Schoolcraft being with them, George said, "that if Marion did not do something with John Mann before court, he would come near to, if he did not quite, penitentiary him and Hardman at court," and said, "Hardman is the boy that is not afraid." The name of James H. Schoolcraft is James Hardman Schoolcraft.

Frank Mann, a son of deceased, testified, that he was in McLeansboro on the Saturday next before the Friday on which

the deceased was shot, and heard a talk between the deceased and George Schoolcraft; that the deceased told George he was coming down Friday to the Bullard place to measure up McCloud's corn for Lewis Hall; "George told him he wouldn't; father said he would, and George said to him, 'You won't; there's more ways of killing a dog than choking him to death on butter;' that George told father he would show him that he would stay on that place; that he would kill a man before he would be run over, and that John Mann could not bulldoze him." The witness Barnett testified to the same, except the last two statements.

The above are the chief criminating circumstances. We will not stop to comment upon them, or to refer to what exculpatory matter may appear in the case. It is not to be expected that the crime of secret assassination will be proved by direct testimony. It is, from the nature of the case, only the evidence of circumstances tending to show guilt, which ordinarily can be adduced. The force of the circumstances, as indicating guilt, was peculiarly for the consideration of the jury. The circumstances which were detailed in evidence appear to have been sufficient to produce in the minds of the jury a conviction that the defendants committed the homicide charged, and we are of opinion that the question of guilt should be left to rest with the decision of the jury,—that there is not such a case presented as calls for a court's interference with the verdict, as unsustained by the evidence.

There are some legal points made which remain to be noticed. It is said the court erred in refusing defendants' challenge of a juror who said he could not read English writing. The abstract shows no such challenge. We are not pointed to any place in the record showing such a challenge. From an examination of the record made by us, we do not discover in it any such challenge. This sufficiently disposes of this ground of error.

The witness Barnett was permitted to testify, for the People, that in the spring of 1885 he heard George Schoolcraft talk about his trouble with John Mann, and George said, "he (George) was part Indian,—bad medicine,—and that something serious would grow out of this trouble." Objection is taken to the reception of this testimony, as calculated to arouse prejudice against the defendants, and that the declaration of one defendant was inadmissible against his co-defendants. The evidence was properly received, as being competent testimony against George Schoolcraft, and was pertinent, as tending to show a threat by him.

Defendants made offer of proof, by a witness, "that the deceased said to him, a few days before he was killed, that he expected that some of those fellows whose wives he had been running after, would kill him some day." The exclusion of this offer of proof is assigned for error. The offer was not of the evidence of any fact which was relevant to the issue, but of what was but the statement of mere apprehension on the part of the deceased, and we perceive no error in its exclusion.

The giving of the following instruction, on behalf of the People, is insisted upon as error:

"7. That if the jury believe, from the evidence, beyond a reasonable doubt, that the defendants deliberately and intentionally shot John Mann, in manner and form as charged, and as he was passing along the public highway, and that from the effects of such shooting the said John Mann died, as charged in the indictment, it matters not that such evidence is circumstantial, or made up from facts and circumstances, provided the jury believe such facts and circumstances pointing to his guilt, to have been proven, beyond a reasonable doubt, by the evidence."

In the case of *Otmer* v. *The People*, 76 Ill. 149, which is relied on as sustaining this assignment of error, there was a similar instruction, the last clause of which was the same as

the last clause of the present instruction, and we there said of it: "Although the instruction was carefully drawn, yet the latter clause of it was calculated to mislead the jury. The jury may have believed the facts and circumstances pointing to defendant's guilt were proven, and yet they may not have regarded the facts and circumstances so proven sufficient to satisfy their understanding and conscience of the defendant's guilt, but notwithstanding this, they were told by the instruction it was their duty to convict." This last feature, as to telling the jury of their duty to convict, is not present in the instruction in this case. The last clause of the instruction in the former case, taken by itself, was calculated to mislead the jury, but whether, when taken in connection with the preceding clause, it was so calculated, may be questioned. It was not indicated in that case that for that instruction alone the judgment should be reversed. There were two other sufficient grounds for reversal there, one being that the verdict was against the evidence. The real purport of the present instruction seems to be no more than that if the jury believed, from the evidence, beyond a reasonable doubt, that the defendants committed the crime charged, it was not required that the evidence should be direct, but that it might be circumstantial. The jury were most fully told, by several other instructions in the case, that in order to convict they must believe, from the evidence, beyond a reasonable doubt, that the defendants were guilty. We can not hold that for the giving of this instruction the judgment in this case should be reversed.

Finding no material error in the record, the judgment must be affirmed.

*Judgment affirmed.*