THE STATE v. CRAWFORD, *Appellant.*

1. Pleading, Criminal: INDICTMENT. It is no objection to the validity of an indictment that it charges the crime to have been committed on a day subsequent to that on which the trial occurred. The defect is cured by the statute. (R. S. 1879, sec. 1821.)

2. Criminal Law: EVIDENCE. The presence or proximity of a defendant to the scene of the crime charged against him, and his taking note of the surroundings, is frequently of value, and may be shown in evidence.

3. ———: ———: VAGUE THREATS. Covert, indirect or vague threats made in regard to a crime are competent evidence against one charged with its commission.

The State v. Crawford.

4. ———: ———. On the trial of one charged with the commission of a crime, it cannot be shown that another has made threats against the person and property of the injured party.

5. **Practice, Criminal:** MOTION FOR NEW TRIAL. A motion for new trial, on the ground of newly-discovered evidence, which is not supported by affidavit showing that such evidence was material, and that due diligence was used to procure it, is insufficient.

6. ———: SEPARATION OF JURY. It is no ground for a reversal of the judgment in a criminal cause that a juryman was allowed to separate from his fellows under the charge of a sworn officer, although such officer was not the one sworn to take charge of the jury.

7. ———: ———: PRESUMPTION. It will be presumed that the sheriff and the court did their duty, and, in the absence of any showing to the contrary, it will be presumed that a person, other than the sheriff, in charge of a juryman who had been allowed to separate from his fellows was a subordinate of the sheriff, and as well qualified to take charge of the juryman as the sheriff himself.

*Appeal from Dallas Circuit Court.*—HON. W. I. WALLACE, Judge.

AFFIRMED.

*A. S. Smith* and *John S. Haymes* for appellant.

(1) The court erred in overruling the objections of the defendant and admitting evidence on part of the state, for that the indictment alleged that the offense was committed on the fourth of November, 1886, and that the fourth of November, 1886, had not arrived. (2) The court erred in permitting the witness to answer the question, as to whether he had seen any persons on the streets some nights before. (3) The court erred in overruling the objections of the defendant, and admitting the testimony of S. H. Burris. (4) The court erred in sustaining the objections of the plaintiff, and refusing to permit the witness, S. H. Burris, to state whether or not he, "not very long before the fire, had had a difficulty and fight with a man named Hogg, and had assaulted and hurt Hogg; that they had

never been reconciled, and that Hogg had made threats against the person and property of the witness. (5) The court erred in overruling the objections of the defendant and admitting the testimony of James Garrison. (6) The court erred in overruling the second objection of the defendant to testimony of James Garrison. (7) The court erred in overruling the third and general objection of the defendant to the testimony of James Garrison, as set out on pages 5 and 6 of brief. (8) The court erred in admitting the testimony of David Hitzhugh. (9) The court erred in admitting the testimony of George Crudington. (10) The court gave improper instructions on the part of the state. (11) The court refused proper instruction on the part of the defendant. (12) The separation of the jury is fatal to the cause of the state.

*John M. Wood*, Attorney General, for the State.

(1) Appellant's objection to the proceedings under the indictment is not tenable. Stating the time imperfectly, or the offense to have been committed on a day subsequent to the finding of the indictment, is no grounds for staying or arresting proceedings thereon. R. S. 1879, sec. 1821; *State v. Eaton*, 75 Mo. 586; *State v. Burnett*, 81 Mo. 119. (2) The witness, S. H. Burris, when asked whether he had seen some parties in the street the night before, replied that he had seen defendant and A. B. Reeser at his store after business hours, some time before the fire. This, when taken in connection with the declarations of defendant, is a circumstance forming a link in the chain of testimony connecting defendant and Reeser with the burning. Burrill, Circ. Ev. 178–180. Evidence of the person, charged, lurking about the scene of the crime, taking notice of localities and objects, is always competent as a circumstance against him. Burrill, Circ. Ev. 350, 399.

(3)　The separation of the jury in this case is not such a violation of sections 1909 and 1966, Revised Statutes, 1879, as to justify a reversal.　There is no pretense that the jurors were tampered with or approached by any one.　*State v. Payton*, 90 Mo. 220; *State v. Collins*, 86 Mo. 245; *Slate v. Bell*, 70 Mo. 633, and authorities cited. (4)　The motion for a new trial on the ground of newly-discovered evidence is not supported by affidavit, does not state the evidence is material, or what efforts had been made to discover it in time.　*State v. Fritterer*, 65 Mo. 422; *State v. Ray*, 53 Mo. 345; *State v. McLaughlin*, 27 Mo. 111.

SHERWOOD, J.—The defendant was charged by the indictment with the crime of arson of the store-house of S. H. Burris, and his trial resulted in his conviction of that offense, his punishment being assessed at imprisonment in the penitentiary for the term of five years. From the judgment and sentence he appeals to this court, assigning frequent errors.

I.　The charge that the indictment is fatally defective, for that it charges the crime to have been committed on a day subsequent to that on which the trial occurred, is answered by section 1821, Revised Statutes, 1879.　The case of *State v. Burnett*, 81 Mo. 119, is an adjudication upon this section of the statute, directly in point, and directly opposed to the contention of the defendant's counsel.

II.　There was no error committed in admitting testimony that defendant and his co-indictee, Reeser, were at the store-house of Burris after business hours, some time before the burning occurred.　Evidence that the defendant was seen lurking about the scene of the alleged crime, taking notice of localities and objects; that, besides his proximity of vicinity to the *locus* of the crime, he had conversations with different persons, in which he made, in regard to the crime, covert, indirect

or vague threats, more properly designated as "verbal intimations" and as "declarations of intention," was all competent evidence, and it is the constant practice to admit such evidence in courts of justice.

Treating of the subject of such "verbal intimations," an eminent text-writer says : "The verbal expressions under consideration are found to assume different shapes, according as they are the offspring of cold-blooded craft, or mere violent and hasty malignity. In the former case, they are sometimes managed with great art; they are thrown out voluntarily and purposely, it is true, but in so obscure and intangible a form as to amount to nothing more than mere general intimations. They are, in fact, parts of a system of preparation, but of the most preliminary kind, intended to explore the way for more direct action in future. The criminal ventures no farther than to hint at or obscurely allude to the act he had in contemplation. He proceeds warily, throwing out feelers, as it were, in advance, partly to sound the temper of those among whom he trusts himself; and, partly, to give an air of probability to the approaching event, and, yet, to disconnect himself from all apparent agency in producing it. Thus, a man, meditating the murder of his wife, was heard to say,—'my wife is a queer body; I should not be at all surprised if she were to take herself off, some fine morning.' Here, even the event itself is not directly mentioned; departure or disappearance is all that is spoken of ; and even that attributed to a cause which, to a stranger, might appear abundantly sufficient to account for it, oddness or peculiarity of habits or character. In other cases, the intimations are given out in the form of *reports*, bearing indirectly upon the object in view, and intended to prepare the minds of friends and neighbors for the event. * * * Care is generally taken, in uttering these intimations, to adapt them to the ideas and intelligence of those to whom they are addressed, or upon

whom they are intended to make an impression. Thus, omens, auguries and predictions are relied on, among those whose habits and limited intelligence induce them to place confidence in such sources of knowledge. But, notwithstanding the art which may be employed, they frequently fail of their intended effect, from the mere want of the ' art to conceal' it. Their essential clumsiness is sometimes manifest, and the result of their utterance is the very reverse of that intended, namely, to fix attention upon the party uttering them, and thus to establish between him and the event, alluded to, the very connection he seeks to avoid. Hence, when the event comes to happen, the expression anticipating it is at once remembered. There is what the civilians would call *damnum prædictum et malum secutum,*—a very pregnant and reasonable ground of suspicion. On this account, expressions of this kind often become important, as elements of circumstantial evidence, constituting a material link in the chain of precedent circumstances, tending to fix a crime charged, upon the party accused of its commission." Burrill, Circ. Evid. [3 Ed.] pp. 333, 334, 335.

Similar remarks are indulged in by the same and other authors as to "declarations of intention." *Ib.* 338; Wills, Circ. Evid. 45; see also *State v. Dickson,* 78 Mo. 438; *State v. Grant,* 79 Mo. 113; *Carver v. Husky,* 79 Mo. 509; *Culbertson v. Hill,* 87 Mo. 553; *State v. McNally,* 87 Mo. 644; *State v. Guy,* 69 Mo. 430.

And the presence or proximity of the defendant to the scene of the crime, taking note of the surroundings, is of value in frequent instances. Burrill, Circ. Evid. 350, 399.

All the incidents mentioned, though slight and unimportant in themselves, when considered apart from each other, may, when pieced together by skilful analysis, form a very strong chain of evidence. In such cases, "trifles light as air," frequently become of the gravest

importance to the state, and of the most serious import and significance, against the accused, forming, as they often do, such a web of circumstances as to afford the most satisfactory, if not conclusive, evidence of his guilt. *Hopkins v. Sievert*, 68 Mo. 201; *Massey v. Young*, 73 Mo. 260; 1 Stark. Ev. 500, 501; Best on Pres. Ev., sec. 188; Burrill, Circ. Evid. 177, 178, 179, 180.

III. There was no error committed in refusing to allow evidence to be adduced, for the purpose of show-ing whether one Hogg had not made threats against the person and property of witness, whose store-house was burned. Such threats were wholly foreign to the case; *res inter alios*—and consequently had no bearing on the guilt of the accused. Best's Evid. [Chamberlayne] 489; Starkie, Ev. [9 Ed.] pp. 36, 61, 82, *et seq.*

IV. Regarding the instructions: Those given on behalf of the state, and those given on behalf of the defendant, seem to place the matters of law arising upon the evidence very fairly before the jury, and there seems to be no just ground for exceptions on the score of instructions refused.

V. The motion for a new trial, on the ground of newly discovered evidence, is insufficient, as not being supported by affidavit, as required by the well-settled law of this court, nor was it shown that such evidence was material nor what diligence was used to procure the same. *State v. Ray*, 53 Mo. 345; *State v. McLaughlin*, 27 Mo. 111. *State v. Fritterer*, 65 Mo. 422.

VI. There is but one point remaining for discussion: As to the separation of the jury; was it lawful? There are three sections of our statute (R. S. 1879) which must answer this question; they are as follows:

Section 1909. "With the consent of the prosecuting attorney and the defendant, the court may permit the jury to separate at any adjournment or recess of the court during the trial, in all cases of felony, except in capital cases; and in misdemeanors the court may permit

The State v. Crawford.

such separation of the jury of its own motion; but when the jurors are permitted to separate, after being empanelled as herein provided for, and, at each adjournment, the court must admonish them that it is their duty not to converse among themselves, nor to suffer others to converse with them, or in their hearing, on any subject connected with the trial, or to form or express any opinion thereon, until the cause is finally submitted to them."

Section 1910. "When the argument is concluded, the jury may either decide in court or retire for deliberation. They may retire under the charge of an officer who, in case of a felony, shall be sworn to keep them together in some private or convenient room or place, and not permit any person to speak or communicate with them, nor do so himself, unless by order of the court, or to ask them whether they have agreed upon their verdict; and, when they have agreed, he shall return them into court, or when ordered by the court. The officer shall not communicate to any person the state of their deliberations."

Section 1966. "The court may grant a new trial for the following causes, or any of them: First, when the jury has received any evidence, papers or documents, not authorized by the court, or the court has admitted illegal testimony, or excluded competent and legal testimony, or for newly-discovered evidence. Second, when the jury has been separated without leave of the court, after retiring to deliberate upon their verdict, or has been guilty of any misconduct tending to prevent a fair and due consideration of the case. Third, when the verdict has been decided by means other than a fair expression of opinion on the part of all the jurors. Fourth, when the court has misdirected the jury in a material matter of law. Fifth, when the verdict is contrary to the law or evidence."

We have decided, in a capital case (*State v. Murray*, 91 Mo. 95), that the separation of the jury even when in charge of an officer was good ground for a new trial. In the case at bar the juryman, Bennett, it is true, went to attend a call of nature, but he left the·rest of the jurymen who remained at the court house in charge of the sheriff, and went away out in town with one Sharp, who was not the officer sworn to take charge of the jury, and then returned with him, through the saloon of one Welch, to the jury room. If Sharp was an officer under Burns the sheriff, there was no good ground for granting a new trial, because of the above circumstance. And it must be presumed from the peculiar wording of the affidavit, and of Sharp's testimony, that he was an officer, but not *the* officer who was left in charge of the jury.

Section 1910 cannot reasonably be construed as meaning that the sheriff, in charge of a jury, has no right to give the jury, or any one of their number, in a case of exigency, in charge to another sworn officer. Besides the sheriff is presumed to do his duty, and so is the lower court, and in the absence of any showing to the contrary it will be presumed that Sharp, who doubtless was well known to the court, was a subordinate of the sheriff's, and, therefore, as well qualified to take Bennett in charge *pro salute corporis*, as if Sharp had been the high sheriff himself. This view of the subject renders any intimation unnecessary as to what our ruling would be were it shown that Sharp was unadorned with any official rank or designation.

Therefore, judgment affirmed. All concur, except RAY, C. J., absent.