JONATHAN CARLTON

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Mt. Vernon May 5, 1894.*

1. CRIMINAL LAW—*proof necessary to conviction.* The proof of the charge in criminal cases involves the proof of two distinct propositions: First, that the act itself was done; and secondly, that it was done by the person charged, and by none other,—in other words, proof of the *corpus delicti,* and of the identity of the prisoner.

2. SAME—*circumstantial evidence — its sufficiency.* What circumstances amount to proof of an offense can never be matter of general definition. The test is the sufficiency of the evidence to satisfy the understanding and conscience of the jury. It is sufficient if they produce moral certainty, to the exclusion of every reasonable doubt.

3. In order to warrant a conviction of crime on circumstantial evidence, the circumstances, taken together, should be of a conclusive nature and tendency, leading, on the whole, to a satisfactory conclusion, and producing, in effect, a reasonable and moral certainty that the accused, and no one else, committed the offense charged.

4. Among the circumstances which may be judicially considered as leading to important and well-grounded presumptions, are motives to crime, declarations or acts indicative of guilty consciousness, or intentions and preparations for the commission of crime.

5. SAME—*instruction as to circumstantial evidence.* At the trial of a criminal case the court refused an instruction asked by the defendant, which was as follows: "The jury are instructed, as matter of law, that where a conviction for a criminal offense is sought on circumstantial evidence alone, the People must not only show, by a preponderance of evidence, that the alleged facts and circumstances are true, but they must be such facts and circumstances as are absolutely inconsistent, upon any reasonable hypothesis, with the innocence of the accused, and incapable of explanation upon any other theory than that of the guilt of the accused; and in this case, if all the facts and circumstances relied on by the People to secure a conviction can be reasonably accounted for upon any theory consistent with the innocence of the defendant, they should acquit him :" *Held,* properly refused, as being too broad and sweeping in its terms.

6. SAME—*degree of proof required.* The jury should be satisfied of the defendant's guilt beyond a reasonable doubt, and if there be no

probable hypothesis of guilt consistent with the facts of the case, the defendant must be acquitted.

7. Same—*reasonable doubt explained.* While a reasonable doubt is difficult to define accurately, all the authorities agree that such a doubt must be actual and substantial, as contradistinguished from a mere vague apprehension, and must arise out of the evidence. The jury may be said to have a reasonable doubt when, after the entire comparison and consideration of all the evidence, they can not say they feel an abiding conviction, to a moral certainty, of the truth of the charge.

8. Proof "beyond a reasonable doubt" is such proof as precludes every reasonable hypothesis except that which it tends to support. It is proof "to a moral certainty," as distinguished from an absolute certainty. The two phrases, "proof beyond a reasonable doubt," and "proof to a moral certainty," are synonymous and equivalent. Each signifies such proof as satisfies the judgment and conscience of the jury, as reasonable men, and applying their reason to the evidence before them, that the crime charged has been committed by the defendant, and so satisfy them as to leave no other reasonable conclusion possible.

9. Same—*instruction as to reasonable doubt.* On the trial of one for arson, the court instructed the jury that "the reasonable doubt the jury are permitted to entertain, must be as to the guilt of the accused on the whole of the evidence, and not to any particular fact in the case :" *Held,* that the instruction was not erroneous.

10. Criminal law—arson—*of the proof necessary.* On an indictment for arson it is necessary for the People to prove that the building described was burned by the accused, and that such burning was done with felonious intent, or, in the language of the statute, "willfully and maliciously."

11. In arson, the main fact required to be proved, in the first place, is the burning of the building, and when that is shown, then it is necessary to show how the act was done, and by whom, in order to convict the accused. When the general fact is thus proved, a foundation is laid for the introduction of any legal and sufficient evidence that the act was committed by the accused, and that it was done with a criminal intent. Such evidence need not be direct and positive, but may be circumstantial in its character.

12. Same—*admissible evidence—foot-prints.* On the trial of one for arson in the burning of a barn, evidence of the foot-prints near the barn, or leading to and from it, and their correspondence with the defendant's feet, is competent; and though not, by itself, of any independent strength, it is admissible with other proof, as tending to make out a case.

13. SAME—*threats of a third person.* On the trial of one for the burning of a barn, the defendant offered to prove by witnesses that they had heard a third person make threats that he would burn up everything the prosecutor had, which was not admitted: *Held,* that the proposed testimony was mere hearsay, and was properly excluded.

14. It is competent for the accused to show, by any legal evidence, that another committed the crime charged to him, and that he had no participation in it. But this can not be shown by the admissions or confessions of a third person not under oath, which are only hearsay. The proof must connect such third person with the fact,—that is, with the perpetration of some deed entering into the crime itself. There must be proof of such a train of circumstances as tend clearly to point to him, rather than to the prisoner, as the guilty party.

15. SAME—*alibi—burden of proof.* The burden of proof of an *alibi* in a criminal case is upon the accused, and in order to maintain that defense he is bound to show, in its support, such facts and circumstances as are sufficient, when considered in connection with all the other evidence in the case, to create in the minds of the jury a reasonable doubt of the truth of the charge against him.

16. REASONABLE DOUBT—*how determined—alibi.* The reasonable doubt which will acquit a prisoner when his defense is an *alibi,* is the doubt of guilt which arises from a consideration by the jury of all the evidence, as well that touching the question of the *alibi* as the criminating evidence introduced by the prosecution.

17. EVIDENCE—*hearsay—res gestæ.* Extra-judicial statements of third persons can not be proved by hearsay, unless such statements are part of the *res gestæ.*

18. INSTRUCTIONS—*need not be repeated.* A defendant can not complain of the refusal of an instruction if its substance is embodied in instructions which are given, and in so holding this court does not necessarily hold such given instructions to be correct.

WRIT OF ERROR to the Circuit Court of Johnson county; the Hon. A. K. VICKERS, Judge, presiding.

Messrs. MORRIS & MOORE, and Mr. S. A. VANKIRK, for the plaintiff in error.

Mr. M. T. MOLONEY, Attorney General, and Mr. GEORGE B. GILLESPIE, State's Attorney, for the People.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is an indictment against the plaintiff in error for arson. The indictment charges him, in the usual form, with setting fire to· and burning the barn of one Rob Roy Ridenhour. The jury found him guilty, and fixed his punishment at imprisonment in the penitentiary for a term of four years. Motions for new trial, and in arrest of judgment, were made and overruled. Judgment was rendered, and sentence pronounced, in accordance with the verdict.

On the afternoon of Saturday, April 9, 1892, plaintiff .in error was arrested for the violation of a town ordinance at Vienna in Johnson County, by the town marshal, assisted by one of the deputy sheriffs and also by the said Ridenhour. He was taken to the county jail in an intoxicated condition, having a knife in his hand and a revolver in his pocket. He and Ridenhour each lived in the country about four and a half miles from Vienna, and had ridden into town together on the morning of that day. His arrest was made with .difficulty and after a scuffle. By direction of Ridenhour his knife and revolver were taken away from him. While he was lying upon his back in the hall-way of the jail, his arms and feet being held by those who arrested him, he said: "Oh, yes! Bob Ridenhour, you live in the country, and you will think of this, god damn you, when your barn is on fire." He repeated the remark several times, varying the expression, saying, according to one witness: "you will think of this when you see your barn in flames;" according to another: "you will think of this when your barn is burned; your barn is on a high hill, it will look well when it is burning." He was released from jail between 10 and 11 o'clock on the night of that same day, and left town about 11 o'clock in company with Thomas Verhines and Edward Hogg, each of the three riding on horseback. The plaintiff in error stopped on the way at the house of Mrs. Bridges, and obtained some· matches. They rode together

about a mile when they separated, Verhines going east and Carlton and Hogg going south. Plaintiff in error and Hogg continued to ride together about a mile further, when they separated, the former going southeast and the latter going southwest; the home of Carlton was about 2 miles, and that of Hogg about $2\frac{1}{2}$ miles, from the point where they separated. In going to his home from this point plaintiff in error would pass in sight of Ridenhour's house. Ridenhour's barns were burned that night. He says that he went to bed between 10 and 11 o'clock, and that it was after midnight when he first saw the fire. On the next day, Sunday, April 10, an examination was made of the premises. Tracks were found south of the barn in a path leading to the highway, which ran in the general direction of the house of plaintiff in error. Mud was found upon the fence at the corner of the field, indicating that some one had climbed over the fence. The oats in the field had not come up. An examination of the tracks showed, that one foot had made a deeper impression than the other. Carlton was arrested on that Sunday afternoon. A measurement of the tracks showed, that they corresponded in length with tracks made by Carlton in the road on that day, and with the shoes worn by him on that afternoon. It was proven, that he was lame and walked with "a kind of hop." One of the witnesses says: "the foot he limped on corresponded to the irregular tracks in the field." Two barns were burned, containing corn, hay, mules and horses. The horses escaped, but one of the mules was burned to death, and the corn and hay were destroyed. Hogg says that he saw no fire when he passed with Carlton.

The only evidence introduced on the defense seems to have had for its object the proof of an *alibi*. The testimony tends to show, that the barns were on fire after midnight and somewhere about one o'clock, though one of the witnesses says he saw the fire at 4 o'clock in the morning, and, when he saw it, went to it from his house, a half mile distant, and found the

barns "pretty well all burned down." The evidence does not certainly fix the hour when the plaintiff in error reached his home on the night of the fire. His mother swore, that "it was about twelve o'clock or near that." One of his sisters swore, that she heard the clock strike 12, and another that she heard it strike one, after his arrival.

Counsel for plaintiff in error make the general objections, that there is an absence of evidence relative to the *corpus delicti*, and that the evidence is purely circumstantial. "The proof of the charge in criminal causes involves the proof of two distinct propositions : first, that the act itself was done ; and, secondly, that it was done by the person charged, and by none other ;— in other words, proof of the *corpus delicti*, and of the identity of the prisoner." (3 Greenl. on Ev. sec. 30.) Here, the act done, which was to be proven, was the burning of the barn. It was also required to be proven, that the barn was burned by the plaintiff in error, and that such burning was done with felonious intent, or, in the language of the statute, "willfully and maliciously." (1 Starr & Cur. Ann. Stat. page 759 ; 3 Greenl. on Ev. secs. 55, 56.) It has been said that, in *arson*, the *corpus delicti* consists not only of the fact that a building has been burned, but also of the fact that it has been willfully fired by some responsible person. (*Winslow* v. *The State*, 76 Ala. 42.) The main fact, however, which is to be proven in the first place, is the burning of the building. When that fact is established, then it is necessary to show how the act was done, and by whom. We think that, in the present case, the fact that the barns were burned was clearly and satisfactorily proven ; and the circumstances were such as to exclude accident, or natural causes, as the origin of the fire. When the general fact is thus proved, a foundation is laid for the introduction of any legal and sufficient evidence, that the act was committed by the accused, and that it was done with criminal intent. (*Sam* v. *The State*, 33 Miss. 347 ; *Phillips* v. *The State*, 29 Ga. 105.) Such evidence need not be direct and positive, but may

be circumstantial in its character. (*Winslow* v. *The State, supra.*) In both criminal and civil cases, "a verdict may well be founded on circumstances alone; and these often lead to a conclusion far more satisfactory than direct evidence can produce." (1 Greenl. on Ev. sec. 13 a.)

After a careful examination of the evidence in this case, we are not prepared to say that the jury were not warranted in finding the verdict returned by them. Among the circumstances which may be judicially considered as leading to important and well grounded presumptions, are "motives to crime, declarations or acts indicative of guilty consciousness or intention, preparations for the commission of crime." (Wills on Circum. Ev. page 39). It appears from the facts above recited, that there was evidence here, which tended to show the existence of just such circumstances as are thus indicated, revenge for arrest and imprisonment, threats that the barns would be burned, halting on the way to obtain matches. The evidence of the foot-prints and their correspondence with the defendant's feet was competent, and, though "not by itself of any independent strength, is admissible with other proof as tending to make out a case." (Wharton's Crim. Ev.—8th ed. sec. 796). In *Winslow* v. *The State, supra,* where the indictment was for *arson,* and "there was evidence tending to show a fresh track in the lane leading from the road to the house; (and) that this track, and the track of the defendant, corresponded," it was said: "The previous threats of the defendant, and his declarations in the nature of threats, were, on the same principle, properly admitted. While they are not of themselves convincing of guilt, from them, in connection with the other circumstances, if believed by the jury, guilt may be a logical sequence." (Wharton's Crim. Ev.—8 ed.— sec. 756).

As to the defense of an *alibi* the burden of making it out was upon the plaintiff in error, (*Ackerson* v. *The People,* 124 Ill. 563), and, in order to maintain it, he was bound to es-

tablish in its support such facts and circumstances as were sufficient, when considered in connection with all the other evidence in the case, to create in the minds of the jury a reasonable doubt of the truth of the charge against him. (*Garrity* v. *The People*, 107 Ill. 162; *Mullins* v. *The People*, 110 id. 42). It cannot be said, that the defense was made out so clearly and satisfactorily as to be availing against the case made by the State.

It is assigned as error, that the court refused to permit the defendant to prove by two witnesses, that they had heard Thomas Verhines make threats that he would burn up everything Ridenhour had. We do not regard this ruling as erroneous. Threats of a third person, other than the prisoner on trial, against the victim of the crime charged are mere hearsay, and are inadmissible. Evidence of this character tends to draw away the minds of the jury from the point in issue, which is the guilt or innocence of the prisoner, and to excite their prejudices and mislead them. (1 Greenl. on Ev. secs. 51, 52; *Walker* v. *The State*, 6 Tex. Ct. of App. 576; *State* v. *Duncan*, 6 Iredell, (N. C.) 236). Such threats of a third person are *inter alios acta;* they are too remote from the inquiry before the jury to be received, and have no legal tendency to establish the innocence of the prisoner. (*Alston* v. *The State*, 63 Ala. 178; *State* v. *Davis*, 77 N. C. 483). It is competent for the defendant to show by any legal evidence, that another committed the crime with which he is charged, and that he is innocent of any participation in it, but this cannot be shown by the admissions or confessions of a third person not under oath, which are only hearsay. The proof must connect such third person with the *fact*, that is, with the perpetration of some deed entering into the crime itself. There must be proof of such a train of facts and circumstances, as tend clearly to point to him, rather than to the prisoner, as the guilty party. "Extra judicial statements of third persons cannot be proved by hearsay, unless such statements were part of the *res gestæ*."

(Wharton's Crim. Ev.—8 ed.—sec. 225; *Smith* v. *The State,* 9 Ala. 990; *State* v. *Davis, supra; Greenfield* v. *People,* 85 N. Y. 75; *Thomas* v. *People,* 67 id. 218; *Owensby* v. *The State,* 82 Ala. 63; *State* v. *Haynes,* 71 N. C. 79; *Rhea* v. *The State,* 10 Yerger, 258; *Commonwealth* v. *Chabbock,* 1 Mass. 143; *State* v. *Johnson,* 30 La. Ann. 921; *People* v. *Murphy,* 45 Cal. 137; *State* v. *Smith,* 35 Kans. 618; *State* v. *May,* 4 Dev. (N. C.) 328; *State* v. *Wright,* 9 Yerg. 342).

It is assigned as error, that the court instructed the jury, that "the reasonable doubt the jury are permitted to entertain must be as to the guilt of the accused on the whole of the evidence, and not as to any particular fact in the case." We do not regard the doctrine of the instruction as erroneous. It is in accordance with the rule, which we have laid down in a number of cases. (*Mullins* v. *The People, supra; Davis* v. *The People,* 114 Ill. 86; *Leigh* v. *The People,* 113 id. 372; *Bressler* v. *The People,* 117 id. 422; *Hoge* v. *The People,* id. 35.

There was no error in refusing the defendant's third refused instruction, because instructions given for the State, and for the accused, required the jury to believe from the evidence beyond a reasonable doubt, that the defendant willfully and maliciously burned the barn of Ridenhour.

Complaint is made that the court refused to instruct the jury as follows: "If the jury entertain any reasonable doubt as to whether or not the defendant was at his own home, or at the scene of the alleged offense at the time such offense was committed, then it is your duty under the law to acquit him." Such an instruction was held to be incorrect in *Mullins* v. *The People, supra.* The reasonable doubt of guilt, which will acquit the prisoner, when his defense is an *alibi,* is the doubt, which arises from a consideration by the jury of all the evidence, "as well that touching the question of the *alibi,* as the criminating evidence introduced by the prosecution." (*Mullins* v. *The People, supra.*)

· In the case at bar, 14 instructions were given for the State and 18 for the defendant. The jury was instructed in regard to the subject of reasonable doubt in accordance with the principles laid down by this court in *Miller* v. *The People*, 39 Ill. 457; *May* v. *The People*, 60 id. 119; *Connaghan* v. *The People*, 88 id. 460; *Spies* v. *The People*, 122 id. 1. We see no reason for departing from the views expressed in these cases.

Counsel for plaintiff in error claim, that the trial court erred in refusing to give their refused instruction, No. 17, which is as follows:

"The jury are instructed, as a matter of law, that when a conviction for a criminal offense is sought on circumstantial evidence alone, the People must not only show, by a preponderance of evidence, that the alleged facts and circumstances are true, but they must be such facts and circumstances as are absolutely inconsistent, upon any reasonable hypothesis, with the innocence of the accused, and incapable of explanation upon any other theory than that of the guilt of the accused; and in this case, if all the facts and circumstances relied on by the People to secure a conviction can be reasonably accounted for upon any theory consistent with the innocence of the defendant, they should acquit him."

In instruction No. 13, given for the People, the court told the jury, that circumstantial evidence should be "of such a character as to exclude every reasonable hypothesis other than that the defendant is guilty." In instruction No. 1, given for the defendant, the court instructed the jury, that "the defendant is presumed to be innocent until the contrary appears by the evidence, and such evidence must be so strong and convincing as to remove every reasonable doubt of his guilt to the exclusion of every reasonable hypothesis of his innocence." Irrespective of the question whether refused instruction No. 17 was right or wrong, the defendant could not have been injured by its refusal in view of the giving of plaintiff's instruction No. 13 and defendant's instruction No. 1, as above quoted,

whether the two last named instructions were correct or not. A defendant cannot complain of the refusal of an instruction, if its substance is embodied in instructions which are given; and, in so holding, this court does not necessarily hold such given instructions to be correct.

In addition, however, to this consideration, said instruction No. 17 was properly refused, because it is so broad and sweeping in its terms, that, if it were given in every criminal case dependent upon circumstantial evidence, it would have a tendency to prevent, in many instances, the conviction of guilty parties. (*Gannon* v. *The People*, 127 Ill. 507; Whart. Crim. Ev.—8th ed.—sec. 10). "What circumstances amount to proof can never be matter of general definition. The legal test is the sufficiency of the evidence to satisfy the understanding and conscience of the jury. On the one hand, absolute, metaphysical and demonstrative certainty is not essential to proof by circumstances. It is sufficient if they produce moral certainty to the exclusion of every reasonable doubt." (1 Starkie on Ev. sec. 79; *Otmer* v. *The People*, 76 Ill. 149). The circumstances must be such as to produce a moral certainty of guilt, and to exclude any other reasonable hypothesis. (*Commonwealth* v. *Goodwin*, 14 Gray, 55; 1 Greenl. on Ev. sec. 13 a). The jury should be satisfied of the defendant's guilt beyond a reasonable doubt, and if there be no probable hypothesis of guilt consistent, beyond reasonable doubt, with the facts of the case, the defendant must be acquitted. (*Commonwealth* v. *Costley*, 118 Mass. 1; Wharton's Crim. Ev.— 8th ed.—sec. 21). In order to warrant a conviction of crime on circumstantial evidence, the circumstances taken together should be of a conclusive nature and tendency, leading on the whole to a satisfactory conclusion, and producing, in effect, a reasonable and moral certainty, that the accused, and no one else, committed the offense charged. (*Com.* v. *Goodwin, supra*). It is difficult to define accurately what is a reasonable doubt, but all the authorities agree that such a doubt must be actual

and substantial as contradistinguished from a mere vague apprehension and must arise out of the evidence introduced. (3 Greenl. on Ev. sec. 29, note a, 15th ed.; *Earll* v. *The People*, 73 Ill. 329). The jury may be said to entertain a reasonable doubt, when, after the entire comparison and consideration of all the evidence, they cannot say that they feel an abiding conviction, to a moral certainty, of the truth of the charge. (*Com.* v. *Webster*, 5 Cush. 320). Proof "beyond a reasonable doubt" is such proof as precludes every reasonable hypothesis except that which it tends to support. It is proof "to a moral certainty," as distinguished from an absolute certainty. The two phrases, "proof beyond a reasonable doubt," and proof "to a moral certainty," are synonymous and equivalent. "Each signifies such proof as satisfies the judgment and conscience of the jury, as reasonable men, and applying their reason to the evidence before them, that the crime charged has been committed by the defendant, and so satisfies them as to leave no other reasonable conclusion possible." (*Com.* v. *Costley, supra*).

The judgment of the Circuit Court is affirmed.

*Judgment affirmed.*