.[Spicer v. The State.]

## Spicer *v.* The State.

### Murder.

(Decided July 6, 1916.   Rehearing denied December 30, 1916.
73 South. 396.)

1. **Homicide; Evidence; Defendant's Character.**—Where the prosecution was for wife murder and the motive asserted was the recovery of proceeds of a life insurance policy, and a desire to be released from the restraint of an uncongenial marriage, testimony of the immoral acts, conduct and association of defendant with other women during the second year preceding the homicide, and up to a short time before the homicide, was admissible.

2. **Same.**—The exclusion of evidence that shortly after the homicide another person had stated that he shot and killed decedent by mistake, intending to shoot defendant, was proper.

3. **Witnesses; Credibility; Evidence.**—Where the employee of the insurer appeared as a witness for the state, and his testimony was without dispute, evidence that insurer of the life of decedent had employed a detective to secure evidence of defendant's guilt, was excluded without injury; such evidence being admissible only as affecting the credibility of witness.

4. **Appeal and Error; Harmless Error; Evidence.**—The admission in evidence of a letter of defendant to a witness for the state, which tended to show a state of ill will between defendant and the witness, who was greatly concerned in and active for the conviction of defendant, was not prejudicial to defendant.

5. **Homicide; Evidence.**—Where one of the motives attributed to defendant accused of murdering his wife was the desire for release from the re-

straint of his marriage, the admission óf letters of the defendant to another woman to show his infidelity to his wife, and an immoral propensity and conduct, was not error.

6. **Same.**—Where there was other evidence that the relation of defendant with another woman, was immoral, the admission of evidence of the physical attraction of such woman with whom defendant corresponded, was not erroneous.

(Mayfield, J., dissents in part.)

APPEAL from Covington Circuit Court.

Heard before Hon. H. A. PEARCE.

Sam Spicer was convicted for murder of his wife, and he appeals. Affirmed.

HENRY OPP, and POWELL & ALBRITTON, for appellant. W. L. MARTIN, Attorney General, and W. L. PARKS, for the State.

McCLELLAN, J.—The appellant has been the second time adjudged guilty of the murder of his wife, Nobie Spicer; the sentence each time being life imprisonment. Mrs. Spicer was assassinated. The assailant used a shotgun that belonged to the appellant. She survived about four weeks. The only open question has been, Who was the guilty agent? The sole reliance of the prosecution to fix guilt on the appellant, the hsuband, is circumstantial evidence. There has been presented no positive proof that he was concerned in this most cruel of homicides. Following it within the hour, the appellant shot a negro boy, Joe Green, to death; the idea on the one hand being that the negro was the assassin of Mrs. Spicer, and, on the other, that the death of Green would either silence a witness or afford an unquestionable premise for the laying of the act upon one who could not deny any fact or circumstance to be asserted to show Green's guilt of the homicide. The report of the former appeal will be found in 188 Ala. 9, 65 South. 972. Many of the circumstances surrounding and relating to the tragedy are there stated. From the evidence it appears that the prosecution entertained two distinct theories upon which the guilt of the appellant might be rested. They were: First, that the appellant himself shot his wife, using the negro boy, Green, to place the gun where it was later found outside of the front gate to appellant's yard; and, second, that the appellant procured Green to assassinate Mrs. Spicer—the motive attributed to the appellant being that he might come into possession of the proceeds of a large insurance,

which he had procured to be issued on her life, payable to him in any event, a few months before she was assassinated, as well as that he might be released from the restraints and obligations of the unhappy, uncongenial, resented marriage relation into which they had entered at an early age. In addition to a denial of any incriminating connection of the appellant with the killing of Mrs. Spicer, the defense asserted was that Joe Green, a laborer in appellant's employ, shot Mrs. Spicer by mistake, he intending to kill appellant toward whom he entertained and expressed hostile feelings and purposes due, it is asserted, to what the negro boy conceived to be ill treatment of him by appellant.

(1) The evidence is voluminous. It has been carefully considered. It is manifest, from the evidence, that every material issue in the case was due to be submitted to the jury for decision. There was no possible sound ground upon which the trial court could have given the affirmative charge for the defendant upon any of the issues or elements of the issues embraced in the theories entertained by the prosecution, as before summarily stated, or upon any of the issues involved in the defense asserted. Necessarily the evidence took and must have taken a wide range; and in the process of completely disclosing the case for and against the defendant it must have been unavoidable that facts and circumstances that in and of themselves might appear to possess little or no probative value or effect when unassociated with other provable circumstances calculated to shed light on the issues involved might, or even would, when correlated with facts and circumstances bearing a relation to the guilt or innocence of the accused, assume importance and a persuasive character and effect to carry conviction and to justify a fair, sound judgment. A great deal of the testimony offered by the prosecution was intended to establish immoral acts, conduct, and associations, with several women, on the part of the accused, during the year 1911 and up to within a short time before the homicide in February, 1913. The testimony relating to such immoralities was admissible for its bearing upon the inquiry or motive vel non of the husband to be free from the bonds of matrimony that he might, if it was so found by the jury, be unrestrained to gratify his desires with another or other women. The rules of law governing the admission of such testimony were thoroughly considered on the former appeal. It was then correctly held that "mere lapse of time alone would" not render this character inad-

missible as tending to show motive; that mere lapse of time "would go rather to its weight and sufficiency than to its admissibility." The trial court did not err in allowing the prosecution to introduce testimony to the effect that the accused, even as far back as the year 1911, was so conducting himself as to indicate immoral practices and associations.

(2) After the introduction of evidence connecting Joe Green with the act of assassinating Mrs. Spicer, the defendant offered to show that shortly after Mrs. Spicer was shot Joe Green told Ruth Reynolds "that he was the one that shot Mrs. Spicer, and that he shot her through mistake, expecting to shoot Mr. Sam Spicer, or intending to shoot Mr. Sam Spicer, the defendant." The court refused to allow the defendant to introduce testimony to the effect stated. This action of the court was in accord with the rules established in this state since the deliverance in *Smith v. State.* 9 Ala. 990. In the recent decision of the Supreme Court in *Donnelly v. United States,* 228 U. S. 243, 272-277, 33 Sup. Ct. 449, 57 L. Ed. 820, Ann. Cas. 1913E, 710, the question was fully considered; the court approving, under extreme circumstances, the pertinent doctrine of the decision in *Smith v. State, supra.* This court, in *McDonald's Case,* 165 Ala. 89, 90, 51 South. 629, 631, thus restated the established rule: "One accused of crime may show his own innocence by proof of the guilt of another; but the evidence of the guilt of the other must relate to the res gestæ of the event—the perpetration of some deed entering into the crime itself.—*Levison v. State,* 54 Ala. 520, 527; *Carlton v. People,* 150 Ill. 181, 37 N. E. 244, 41 Am. St. Rep. 346; *Owensby v. State,* 82 Ala. 63, 2 South. 764. It is a necessary consequence of this doctrine that declarations by that other are not admissible for any purpose unless it be to affect his credibility as a witness on the trial.—*Smith v. State,* 9 Ala. 990; *Alston v. State,* 63 Ala. 178. Where there is evidence tending to connect another with the commission of the crime with which the prisoner is charged, and the evidence adduced against the prisoner is circumstantial, the defendant may adduce any legal evidence tending to fix guilt of the offense on another and to show motive on that other's part to commit the offense.—*Tatum v. State,* 131 Ala. 32, 31 South. 369; *Walker v. State,* 139 Ala. 56, 66, 35 South. 1011; *Carlton v. People, supra.*

"It will be noted that a broad distinction, in respect of admissibility of evidence in this connection, is taken between matters

merely hearsay, such as declarations, confessions, and flight, and evidence tending to connect, actually or circumstantially, including motive, another with the offense of which defendant is charged. Another's motive is not primarily admissible, but is rendered so whenever there is evidence tending to connect that other with the criminal act."

The application of the rule was also illustrated in *Welsh v. State,* 9 Ala. 92, 96, 11 South. 450. The deliverances of the Court of Appeals in *Davis v. State,* 8 Ala. App. 214, 62 South. 382, and *Terry v. State,* 13 Ala. App. 115, 69 South. 373-375, are not in accord with the authorities in this court.

(3) The defendant sought to show by the witness Van Pelt that the New York Life Insurance Company—the insurer in one of the policies which was matured by the death of Mrs. Spicer— had employed a detective to develop or to secure evidence of defendant's guilt of the murder of his wife, he being the beneficiary under the policy mentioned. It has been ruled here that evidence that the employer of one of the state's witnesses is taking an active part in the prosecution of the defendant is admissible.—*Prince's Case,* 100 Ala. 144, 148, 14 South. 409, 46 Am. St. Rep. 28. Such evidence is admissible for the sole purpose of affecting the credibility of the witness. If it be assumed that Van Pelt's relation to the company was that of employer and employee—a quite doubtful matter under the recitals of the transcript—a review of the evidence presented through the witness Van Pelt discloses no field for the practical operation of the stated rule; his evidence being without dispute. No prejudicial error resulted from the court's declination to allow the defendant to adduce the evidence indicated.

(4) There was no error prejudicial to defendant in admitting his letter to Floyd, dated May 30, 1915. In one aspect its presence in the evidence was favorable to defendant in that its terms tended to show that a state of ill will had existed between Floyd and the defendant; it appearing otherwise that Floyd, who had testified as a witness for the prosecution, was greatly concerned in and active toward the conviction of the defendant. Furthermore, the many expressions in the letter carried to the jury a strong appeal for defendant that, without the letter, could not have been made so pointedly available to the defendant.

(5, 6) Under the evidence relating to the prosecution's assertion of defendant's infidelity to his wife and immoral propensi-

[Spicer v. The State.]

ties and conduct, no error was committed in admitting the letters to the Berry woman. It is a mistake to assume that this court held, on previous appeals, these letters or one of them to be inadmissible. Nor was there error in permitting the prosecution to adduce evidence tending to show the physical attractiveness of the Berry woman; there being other evidence inviting the conclusion that defendant's relation or association with her was immoral or that he entertained such designs with respect to her.

No prejudicial error appearing, the judgment must be affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE, GARDNER, and THOMAS, JJ., concur. MAYFIELD, J., dissents. SAYRE, J., not sitting.

MAYFIELD, J. (dissenting).—I am of the opinion that the declarations of Joe Green, offered by the defense as evidence, were admissible, and that it was error to decline to allow this proof. I do not doubt the correctness of the ruling in any of the cases cited as supporting the holding of the majority on this appeal. It is the application of those principles to the case and the facts here in hand, to which I cannot agree.

It is well-settled law in homicide trials that neither threats by nor declarations of third parties, standing alone, are admissible as testimony to show that such third party, and not the defendant, killed the deceased. That rule, however, has no application here. The declarations offered did not stand alone and unconnected with other facts and circumstances. In law they were not declarations of a third party. They were the declarations of the party who did the killing, made while in flight from the scene of the crime and while suffering from a wound inflicted by the accused. They were the declarations of Joe Green, who was fleeing from the home of the accused, the scene of the crime, and who, within a few minutes or a few hours at most, thereafter, was taken and put to death; and this defendant accused of murdering him, was first placed in jail on that charge. So these were the declarations of a deceased person shown to have done the killing, and for whose very acts, words, and deeds this accused is now being prosecuted. If the state is allowed to prove the killing by Joe Green, by showing his every act, word, and deed, for days, if not for weeks and months, which had any tendency to

connect this defendant with the killing, it does seem to me that his acts and words at this time (of the declarations), while not a part of the res gestæ of the killing, were so related to and con-. nected with the killing as to explain or elucidate it. The state having brought out every word or deed of Joe Green which tended to connect the defendant as a conspirator or a guilty agent, this declaration which tended to rebut any such.conspiracy, and to show that Green thought he was shooting, or intended to shoot, the defendant instead of defendant's wife, was certainly admissible.

The dying declaration of deceased tended to show, if it did not show, that Joe Green shot her, but that he intended to shoot this defendant, her husband, instead. The wife said it was better that Joe Green shot her than to have shot her husband; that her husband could take so much better care of the children than she could have done.

This proffered declaration, in my judgment, was admissible for several reasons: It was a part of the res gestæ of matter which the state put in evidence for the purpose of connecting the defendant with the crime, by making him responsible for the acts and words of Joe Green, decedent. If all the facts and circumstances of the flight of Joe Green from the scene of the crime, defendant's pursuit of him, shooting at him, probably wounding him, and killing him, were matters going to establish the state's theory, that the purpose of defendant in killing Joe Green was to prevent him from becoming a witness against defendant, and not to avenge the killing of defendant's wife, then this declaration was a part of the res gestæ of this pursuit, capture, and killing of declarant, if not a part of the res gestæ of the killing for which accused is on trial.

In Greenleaf on Evidence (vol. 1, § 108) it is said: "There are other declarations which are admitted as original evidence, being distinguished from hearsay by their connection with the principal fact under investigation. The affairs of men consist of a complication of circumstances so intimately interwoven as to be hardly separable from each other. Each owes its birth to some preceding circumstances, and, in its turn, becomes the prolific parent of others; and each, during its existence, has its inseparable attributes, and its kindred facts, materially affecting its character, and essential to be known in order to a right understanding of its nature. These surrounding circumstances, con-

stituting parts of the res gestæ, may always be shown to the jury, along with the principal fact," etc.

In my judgment the declaration is admissible, under the rules announced, and authorities cited in the opinion of this court on the former appeal. It is there said: "It was also error to decline to allow the defendant to prove threats, on the part of Joe Green, the negro boy, to kill the defendant. There was evidence in the case, and properly so, to the effect, that the negro boy killed the deceased through a mistake of identity; that is, that the boy intended to kill the defendant, and not the deceased.

"It is very true that it is not permissible for the defense to prove threats on the part of a third party to kill the deceased, when there is no evidence tending to show that such third party, and not the defendant, killed the deceased; but the rule is different where there is other and independent proof going to show that such third party actually killed the deceased. See Wills on Cir. Ev. p. 237p, where the rule is thus stated: "Courts generally do not allow the accused to introduce evidence that third persons had threatened to do the act in question; although it cannot be doubted that proof that a third person did the act in question excludes the conclusion that the accused did it; and if threats by the accused tend to show that he did the act, then why should not threats of third persons tend to show that they did it? The reasons given for excluding such testimony are various. See *State v. Beaudet,* 53 Conn. 536, 4 Atl. 237, 55 Am. Rep. 155; *Schoolcraft v. People,* 117 Ill. 271, 7 N. E. 649; *State v. Fletcher,* 24 Or. 295, 33 Pac. 575; *State v. Crawford,* 99 Mo. 74, 12 S. W. 354; *Carlton v. People,* 150 Ill. 181, 37 N. E. 244, 41 Am. St. Rep. 346. But see *Alexander v. U. S.,* 138 U. S. 353, 11 Sup. Ct. 350, 34 L. Ed. 954, and *Worth v. R. R. Co.* (C. C.), 51 Fed. 171, where such evidence was admitted. The defendant cannot show that others had threatened to kill the deceased in the absence of any other evidence tending to connect such others with the homicide in question.—*Woolfolk v. State,* 81 Ga. 551, 8 S. E. 724; *State v. Mann,* 83 Mo. 589; *State v. Duncan,* 28 N. C. 236; *Henry v. State* (Tex. Cr. App.), 30 S. W. 802. But, in connection with such other evidence, threats by the third persons may be proved.— *Morgan v. Com.,* 77 Ky. (14 Bush) 106. Also where the evidence against the defendant is entirely circumstantial.—*Murphy v. State,* 36 Tex. Cr. R. 24, 35 S. W. 174; *Leonard v. Terr.,* 2 Wash. T. 381, 7 Pac. 872.'

"In *Morgan's Case*, 77 Ky. (14 Bush.) 106, it is said: 'We therefore are of the opinion that when, on the trial of a man for the commission of a crime, the proof is conflicting as to whether he or another person perpetrated the offense, the prisoner has the same right to show the conduct, acts, and motives of the other, that the commonwealth has to show the conduct, acts, and motives of the prisoner, and that the evidence of the feelings of Conn toward the deceased, as evidenced by previous threats and personal conflicts, should have been permitted to go to the jury.' "